**E-FILED on** 12/18/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEMRY CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>KENTUCKY OIL TECHNOLOGY, N.V., PETER BESSELINK, MEMORY METALS HOLLAND, B.V.,<br><br>    Defendants. | No. C-04-03843 RMW<br><br>ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION<br><br>**[Re Docket Nos. 126, 127, 134, 137, 142, 145, 146, 147, 148, 153, 154, 155, 270]** |
| KENTUCKY OIL TECHNOLOGY, N.V.,<br><br>    Counterclaimant,<br><br>    v.<br><br>MEMRY CORPORATION and SCHLUMBERGER TECHNOLOGY CORPORATION,<br><br>    Counterdefendants. | |

Counterclaimant Kentucky Oil Technology, N.V. ("KOT") has filed second amended counterclaims against counterdefendants Memry Corporation and Schlumberger TechnologyCorporation ("STC") (together "counterdefendants"). Counterdefendants move for

summary judgment on KOT's third counterclaim for misappropriation of trade secrets and fifth counterclaim to name Peter Besselink co-inventor of certain patents.  For the reasons set forth below, the court denies counterdefendants' motion contingent on KOT's curing of an authentication deficiency.

## I.  BACKGROUND

Memry sued KOT in May 2004 seeking a declaratory judgment that it did not misappropriate trade secrets from Besselink, Memory Metal Holland, B.V. ("MMH"), or United Stenting ("US").  In May 2005, KOT brought its second amended counterclaims against Memry and STC, alleging, *inter alia*, misappropriation of trade secrets and correction of inventorship.  Second Amended Counterclaim ("SAC"), docket no. 32.  Counterdefendants now move for partial summary judgment on these two claims, contending that KOT lacks standing.  Mot., docket no. 126.

KOT alleges that Besselink invented "bistable" and "multistable"[1] cells for use in expandable structures sometime prior to 1997.  SAC ¶ 6.  The record indicates that in January 1997, Besselink filed U.S. provisional patent application No. 60/036,359.  Moyer Decl., Ex. 2.  In January 1998, he filed U.S. patent application No. 09/012,843 and International Application PCT/US98/01310.[2] *Id.*, Exs. 2 & 3.  The '359 and '843 applications matured into U.S. Patent No. 6,488,702, entitled "Bistable Spring Construction for a Stent and Other Medical Apparatus." *Id.*, Ex. 2.

KOT alleges that in 1998, Besselink approached Memry to negotiate a collaborative business project whereby Memry would assist Besselink, MMH, and US in making prototypes of the bistable cell expandable tubes for medical applications.  SAC ¶ 9.  The parties signed a "Collaboration Agreement" in June 1999.  Moyer Decl., Ex. 17.  KOT alleges that once the agreement was signed, Besselink, MMH, and US transferred confidential information to Memry until work under the agreement ceased in June 2000.  SAC ¶¶ 10-13, 15.  During the parties' collaboration, "almost two

---

[1] In the parlance of the parties, bistable cells have two stable conformations (such as open and closed).  Multistable cells have more than two stable conformations.  *See* Moyer Decl., Ex. 2 & 3.

[2] In its counterclaims, KOT refers to the three patent applications collectively as "the Besselink Applications."  SAC ¶ 7.

ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION—C-04-03843 RMW
SEG                            2

dozen Memry employees were exposed to some confidential aspect of the Biflex technology."[3] SAC ¶ 14.

STC allegedly retained Memry in 1999 "to collaborate in developing expandable structures for supporting oil well bores." SAC ¶ 17. KOT claims that Memry and STC appropriated Besselink's bistable cell structure inventions and, in their patent applications, "claimed ownership of the patent rights to the inventions disclosed in the Besselink Applications." SAC ¶ 22.

KOT claims that it is "the successor-in-interest" to the Biflex technology and the Besselink Applications through a multi-step chain of title. SAC ¶ 8. Besselink allegedly assigned his rights in the technology to MMH sometime in 1997. SAC ¶ 7. In April 2000, MMH and US, "a company formed to fund prototype development of the Biflex technology," transferred the intellectual property and trade secret rights to Jomed[4]. SAC ¶¶ 10, 16. Abbott Laboratories Vascular Enterprises Ltd. allegedly acquired the assets of Jomed in early 2003. SAC ¶ 16. Finally, in December 2003, Abbott transferred the rights to KOT. *Id.*

The parties do not dispute that the "Patent Assignment" between Besselink, MMH, and US and Jomed N.V., dated April 2000, transferred Besselink's intellectual property and trade secret rights in the Biflex technology to Jomed N.V.[5] Moyer Decl. ¶ 9, Ex. 8; Besselink Decl. ¶ 6. STC argues that KOT has not established that the subsequent transfers of trade secret rights occurred, from Jomed N.V. to Jomed GmbH, from Jomed GmbH to Abbott, or from Abbott to KOT. *See* Mot. at 1-4.

---

[3] KOT's counterclaim defines the "Biflex technology" as the bistable technology invented by Besselink, "together with the proprietary cell designs, theory, know-how and related analytical developments" of the technology. SAC ¶ 6.

[4] In its counterclaims, KOT does not specify whether "Jomed" refers to Jomed N.V. or Jomed GmbH. Jomed N.V. was the parent company of Jomed GmbH. Besselink Decl. ¶ 7; *see also* Peters Decl. ¶¶ 1, 5 (former CEO of Jomed N.V. describing Jomed N.V. as a "holding company for various operating companies, including Jomed GmbH").

[5] The parties agree that the language of the "Patent Assignment" is sufficient to establish transfer of any trade secret rights. Mot. at 3; Opp'n at 8. STC's objections to and motion to strike exhibits 1-3 of the Peters declaration, therefore, are moot. Mot. to Strike, docket no. 154, ¶ 5.

ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION—C-04-03843 RMW
SEG                                                                 3

1  The record contains an agreement titled "Assignment" between Jomed N.V. and Jomed GmbH, dated October 2000. Moyer Decl., Ex. 9 (under seal). Evidence in the record indicates that Jomed N.V. was declared bankrupt by an Amsterdam District Court in May 2003. Pisano Decl. ¶¶ 4-6, Exs. 1 & 2. KOT attempts to introduce three documents, a "Business Transfer Agreement" between Jomed N.V. and Abbott, an "Intellectual Property Transfer Agreement" between Jomed GmbH and Abbott, and an "Intellectual Property Transfer Agreement" between Jomed N.V. and Abbott, all dated June 2003, to establish that trade secret rights passed from Jomed N.V. to Abbott. Pisano Decl. ¶¶ 9-13, Exs. 3-5 ("JAAs") (under seal). STC moves to strike these exhibits. Mot. to Strike 11. Finally, the record contains an agreement between Abbott and KOT titled "Patent Assignment," dated November 2003. Moyer Decl. ¶ 11, Ex. 10 ("AKA") (under seal); Besselink Decl. ¶ 9.

Also in the record is an agreement dated June 2005 between KOT and Paragon Intellectual Properties, LLC ("Paragon") entitled "Asset Purchase Agreement and Patent Assignment." Moyer Decl., Ex. 12 ("KPA") (under seal). STC contends that KOT lacks standing to seek correction of inventorship because it no longer holds a pecuniary interest in the Biflex technology. Mot. at 12-13.

## II.   ANALYSIS

**A.   Legal Standard**

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A court may grant a motion for summary judgment in part and narrow the issues remaining for trial. *See* FED. R. CIV. P. 56(d).

### B. KOT's Third Counterclaim for Misappropriation of Trade Secrets

California adopted the Uniform Trade Secrets Act ("UTSA") without substantial modification in 1984. Cal. Civ. Code § 3426 *et seq.*; *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 874 (2003). A cause of action for misappropriation of trade secrets has two primary elements: (1) the existence of a trade secret and (2) misappropriation of the trade secret. *See* Cal. Civ. Code § 3426.1(b); *e.g. Cadence Design Sys., Inc. v. Avant! Corp.,* 29 Cal. 4th 215, 220-23 (2002). STC challenges KOT's standing to bring a claim for misappropriation, contending that KOT has not established (i) the existence of the trade secrets or (ii) the contractual chain of title by which it acquired the trade secrets. Mot. at 15-20. Alternatively, STC argues that KOT could only have standing to assert a cause of action for trade secrets misappropriation if each of the assignments in KOT's chain of title expressly conveyed pre-existing causes of action. Mot. at 15-17.

#### 1. Standing Under the UTSA

It is undisputed that under California law, KOT's cause of action for misappropriation of trade secrets arose in 2000—at the time of the first alleged misappropriation by STC and Memry.[6] Mot. at 15; Opp'n at 9 n.10. Analogizing trade secrets to patents and copyrights, STC argues that even if KOT could establish that it owned trade secret rights, it would not have standing to sue for misappropriation unless it was also assigned pre-existing causes of action on those trade secrets. Mot. at 15-17.

---

[6] However, for statute of limitations purposes, the parties dispute when Besselink discovered or "by the exercise of reasonable diligence should have discovered" the alleged misappropriation. *See* Cal. Civ. Code § 3426.6. STC contends that communications between Besselink and L. MacDonald Schetky, "Chief Scientist" for Memry, put Besselink on sufficient notice of the alleged misappropriation in 2000. Mot. at 11, 20; *see* SAC ¶¶ 14, 18-20. Besselink, however, states that he "had no idea that Memry and STC had simply copied [his] bistable cell design for their intended application until [he] saw STC's published applications in early 2003." Besselink Decl. ¶ 16. There exist genuine issues of material fact concerning the reasonableness of Besselink's late discovery. The court still finds, as it did in its April order, that while "a reasonable person in Besselink's position might have been suspicious . . . Besselink and Schetky's previous relationship and Schetky's assurances to Besselink could have reasonably precluded Besselink from becoming suspicious" of the alleged misappropriation. Docket no. 65 at 9-10.

Trade secret protection in California is a creature of statute. *See* Cal. Civ. Code § 3426 *et seq*. While trade secrets are a form of intangible property, "the nature of the property interest and the means by which the interest can be vindicated are matters of state law." *Cadence*, 29 Cal. 4th at 224. STC's analogy to patent and copyright law in this context is inapposite, as the California Supreme Court has determined that analysis under the UTSA should rely on statutory construction and case law, not on generalizations about intellectual property. *See id.* at 225-26 (finding that case law on patents had "little relevance" in determining when a claim for misappropriation arises under the UTSA, as there was "[no] indication that the UTSA was patterned after patent law").

California courts have not explicitly addressed whether, by default, causes of action for trade secret misappropriation are transferred with the trade secrets themselves. The statute, however, is silent as to the issue. Given that the value, and the existence, of a trade secret depends upon it remaining a secret,[7] this court believes that the California Supreme Court would decide, on policy grounds, that it makes more sense to allow the current owner to sue for past misappropriation than a prior owner (assuming that the parties did not agree otherwise when transferring the trade secret).[8] KOT is therefore assumed, absent contractual provisions to the contrary, to have obtained any causes of action for trade secret misappropriation along with any trade secrets it acquired.

**2.   Existence of the Trade Secrets**

STC argues that "it was legally impossible for KOT's predecessors to assign the putative trade secrets" because the trade secrets did not exist. Mot at 12. Any trade secret rights were extinguished (1) when, "according to KOT's allegations, STC and Memry's patent applications published the trade secrets" and (2) when the information was, through assignment, "disclosed

---

[7] A "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

[8] Further, this appears to be the assumption under common law trade secret misappropriation. *See N. Petrochem. Co. v. Tomlinson*, 484 F.2d 1057, 1058 (7th Cir. 1973) (under common law claim for theft of trade secrets, company stood "in the shoes of" companies that owned the secrets when they were allegedly stolen because it had "purchased the manufacturing assets, technical information, and the inventory of each").

ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION—C-04-03843 RMW
SEG                                           6

without confidentiality restrictions." *Id.* The court is not persuaded and finds that issues of material fact remain as to the current existence of KOT's alleged trade secrets.[9]

"[T]rade secret law creates a property right defined by the extent to which the owner of the secret protects his interest from disclosure to others." *DVD Copy*, 31 Cal. 4th at 880 (citations omitted). In light of the requirement of secrecy, it is clear that an unprotected disclosure of a trade secret terminates its existence. *E.g., Vacco Indus., Inc. v. Van den Berg*, 5 Cal. App. 4th 34, 50 (1992). However, "[t]he secrecy requirement is generally treated as a relative concept and requires a fact-intensive analysis." *DVD Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) (citing 1 MILGRIM ON TRADE SECRETS (2003) § 1.07[2]).

Contrary to STC's contentions, the court cannot find as a matter of law that the alleged disclosure extinguished KOT's trade secrets. In KOT's identification of trade secrets pursuant to California Code of Civil Procedure § 2019(d), it alleges misappropriation of twenty-six distinct trade secrets, including experience, techniques, equipment, and know-how concerning the design and modeling process and manufacturing. Moyer Decl., Ex. 15. As the court noted in its April order, "[t]he counterclaim does not allege that every confidential aspect of the Biflex technology has now entered the public domain." Docket no. 65 at 12. Secrecy in this context remains a fact-based inquiry.

Likewise, the court cannot find as a matter of law that the lack of "confidentiality obligations" in KOT's alleged chain of title extinguished any trade secret rights. STC contends that in order for the trade secrets to have remained secret, "confidentiality agreements would have been necessary at each step in the chain of title." Mot. at 19. Unprotected disclosure of a trade secret causes "the information to forfeit its trade secret status." *Religious Tech. Ctr. v. Netcom On-Line Comm'n Servs.*, 923 F. Supp. 1231, 1254 (N.D. Cal. 1995). However, an assignment of a trade secret does not, by law, constitute "unprotected disclosure."

---

[9] The court notes that STC does not appear to be challenging the existence of the trade secrets at the time of the alleged misappropriation in 2000 and 2001. *See* Mot.; Opp'n at 17.

An absolute assignment leaves the assignor no interest in the assigned property or right. BLACK'S LAW DICTIONARY (8th ed. 2004).  Thus, in giving up all rights to use of the secrets through assignment, the assignor is implicitly and legally bound to maintain the secrecy of the information contained in the trade secrets.  STC stresses that each of the successive assignments establishing KOT's chain of title "permitted the recipient to disclose the information at its will in patent applications."  Mot. at 19.  However, STC only shows that the successive owners of the alleged trade secrets had a *right* to disclose the trade secrets, not that they actually disclosed them.  The court rejects STC's contention that the mere absence of a confidentiality agreement in an assignment amounts to public disclosure of the assigned trade secrets.

As material issues of fact remain concerning the current existence of each of KOT's alleged trade secrets, for the purposes of examining KOT's alleged chain of title, the court must assume existence of the trade secrets as alleged.

### 3. KOT's Alleged Chain of Title

STC contends that KOT has failed to establish the chain of title by which it acquired the alleged trade secrets.  Mot. at 7.  In dispute are two links in this chain of title: the transfer of trade secret rights from (i) Jomed N.V./Jomed GmbD to Abbott and (ii) Abbott to KOT.

#### a. Jomed N.V./Jomed GmbD to Abbott

KOT seeks to introduce a "Business Transfer Agreement" and two "Intellectual Property Transfer Agreements" to establish that trade secrets were successfully transferred from Jomed N.V. to Abbott.  *See* JAAs.  Without these agreements, KOT has no documentary evidence in the record to establish the assignment of trade secret rights between Jomed N.V. and Abbott or between Jomed GmbH and Abbott.[10]  STC has moved to strike these exhibits, arguing that the Pisano Declaration

---

[10] The agreement, entitled "Assignment," between Jomed N.V. and Jomed GmbH assigned only patent rights.  Moyer Decl., Ex. 9 (under seal).  However, the Peters Declaration raises an issue of material fact concerning the transfer of trade secrets between Jomed N.V. and Jomed GmbH.  Peters Decl. ¶ 6 ("Because Jomed N.V. was primarily a holding company, rather than an operating company, it did not take possession of acquired tangible or intangible property.  Instead. . . the technology (including the patents, trade secrets and other materials) was immediately transferred from the transferor company to the appropriate operating company within the Jomed Group.").

ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION—C-04-03843 RMW
SEG                                      8

does not aver facts sufficient to demonstrate that Pisano has personal knowledge concerning the authenticity of the documents. Mot. to Strike ¶ 11. The court agrees and grants STC's motion to strike exhibits 3 through 5 of the Pisano Declaration.[11]

It is well-established that unauthenticated documents cannot be considered on a motion for summary judgment. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1990). "To be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e)[12] and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* (quotation mark omitted). Here, Pisano does not aver sufficient personal knowledge of either the documents or their authenticity that would make the documents admissible. Beyond hearsay[13] and the Jomed-Abbott documents, KOT in its opposition filed June 30, 2006 offered no other evidence of the transfer of trade secret rights from Jomed N.V. to Abbott or from Jomed GmbH to Abbott, leaving an evidentiary gap in KOT's alleged chain of title.

KOT apparently recognized this evidentiary gap and filed the declaration of Olivia Tyrrell, outside corporate counsel for Abbott Vascular Devices, Inc. In her declaration she purports to authenticate exhibits 3 through 5 of the Pisano Declaration. However, her declaration is insufficient. She states "[t]he statements set forth in this declaration are made on my own personal knowledge, or if made on information and belief are believed to be true after a good faith investigation." She then says that each of the JAAs is "a true and correct copy of" the particular agreement but offers nothing showing that she has personal knowledge that the documents are authenticate. Tyrrell's statements

---

[11] STC's objections regarding the timeliness of the Pisano Declaration are therefore moot. Mot. to Strike ¶ 12.

[12] Rule 56(e) provides that: "Supporting . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith . . ."

[13] The court also grants STC's motion to strike the hearsay statements at ¶¶ 7, 12, 14 of the Pisano Declaration. *See* Mot. to Strike ¶ 10.

ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION—C-04-03843 RMW
SEG                                           9

1  do not meet the requirements of Rule 56(e) that they "be made on personal knowledge . . . set forth
2  such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is
3  competent to testify to the matters stated therein."  The mere fact that Tyrrell is outside corporate
4  counsel and made some sort of a "good faith investigation" is insufficient.  *See* FRE 901(b)(1),
5  902(11).

6  The court recognizes that KOT's evidentiary insufficiency is a somewhat technical one and to
7  allow summary judgment because of it seems unduly harsh.  Therefore, the court will give KOT
8  until January 10, 2007 to cure the deficiency.  STC and Memry can object to any supplementation
9  within five days after any supplementation by KOT.[14]  Absent an adequate cure, summary judgment
10 will be entered on the third counterclaim for trade secret misappropriation.

11 **b.    Abbott to KOT**

12 STC argues that the "Patent Assignment" between Abbott and KOT only assigned patent
13 rights and did not assign any trade secret rights to KOT.  Reply at 4-6.  KOT contends, however, that
14 the license in the agreement amounts to a *de facto* assignment of trade secrets.  Opp'n at 14.

15 In a paragraph titled "Transfer," the Abbott-KOT Agreement assigns "all right, title, and
16 interest to the Invention and Patents" to KOT.  AKA at 3 (¶ 1).  KOT argues that "[s]tanding alone,
17 the term 'invention' may be interpreted as applying not only to patents, but also to trade secrets."
18 Opp'n at 13.  The plain language of the contract, however, reads otherwise.  In support of its
19 interpretation of the agreement, KOT cites *AT & T Co. v. Integrated Network Corp.*, 972 F.2d 1321
20 (Fed. Cir. 1992).  There, the Federal Circuit held that the term "inventions," as used in the
21 employment agreements at issue, could encompass not only patentable inventions, but also those
22 that are unpatentable or held as trade secrets.  *Id.* at 1324.  The court, however, was forced to read a
23 broad meaning into the term because the contract "shed[] no further light on the meaning of
24 inventions" beyond stating that employees were to assign AT&T all rights to such inventions.  *Id.*
25 That is not the case here.  As STC notes, "Inventions" is narrowly defined for purposes of the

---

[14] The court therefore denies STC's motion for leave to file supplementary material (docket no. 270) without prejudice to STC relying on this supplementary material in response to any filing by KOT properly authenticating exhibits 3 through 5 of the Pisano Declaration.

ORDER DENYING COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT CONTINGENT ON PROOF OF AUTHENTICATION—C-04-03843 RMW
SEG                                                                                                                10

1  agreement. Reply at 4-5. "The invention Bistable Medical Devices (the 'Invention') is described
2  *and claimed* in the patent applications and patents listed in Attachment A (as hereinafter defined as
3  the 'Patents')." AKA at 2 ¶ A (emphasis added). The "Invention," described and claimed in a patent
4  application, is publicly disclosed, and therefore cannot include trade secrets.

5  Under an entirely separate section entitled "Licenses and Enforcement," Abbott grants to
6  KOT a "license, with the right to sublicense, to use the Abbott Know-How for all applications
7  outside of the Application Field."[15] AKA at 5 ¶ 5.2. As Abbott "Know-How" "consist[s] of any and
8  all documents, prototypes, computer files, drawings, specific hardware, minutes, etc. relating to the
9  invention and the Patents for all applications outside the Application Field," it would clearly
10 encompass any related trade secrets. AKA at 4 ¶ 5.1. However, Abbott's transfer of its Know-How
11 to KOT in its "Patent Assignment" is described as a license, not as an ownership interest.

12 KOT urges the court to look beyond the terms of the agreement to the intent of the parties.
13 Opp'n at 6. Abbott and KOT "intended to transfer" to KOT "the sole right to recover for trade
14 secrets misappropriations not related to polymer-based stents." *Id.* KOT relies heavily on the
15 "intent" of the parties as expressed by Besselink. Opp'n at 6-7; *see* Besselink Decl. ¶ 13. "That the
16 parties so intended is confirmed by the fact that . . . Besselink intended to pursue claims against
17 Memry and STC." *Id.* Notwithstanding the potentially self-serving nature of Besselink's statements,
18 such testimony does not justify disregarding the contractual language. *See AIU Ins. Co. v. Superior*
19 *Court*, 51 Cal.3d 807, 821 (the intention of the parties is to be inferred "solely from the written
20 provisions of the contract," unless such an inference is not possible).

21 However, at least two courts have found that an exclusive licensee of a trade secret has
22 standing to sue for misappropriation. In *Denison v. Westmore Dental Arts, P.C.*, a district court
23 ruled that an exclusive licensee of trade secrets had standing under the Pennsylvania common law to
24 make a claim for misappropriation, noting that "[t]he only indicia of ownership not enjoyed by
25 plaintiffs is the right to assign or sub-license their interest." 212 U.S.P.Q. 601, 605 (W.D. Pa. 1981)

---

[15]   "Application Field" is defined as "any and all applications concerning polymer-based stents, including without limitation biodegradable stents." AKA at 4-5 ¶ 5.2.

(stating that while "it still appears that the patent cases provide the best guidance available on this question, it is undoubtably well to keep in mind the distinction between patents and trade secrets").[16]

If the California Supreme Court were to decide the issue, it would likely first look to the language of the UTSA. *See Cadence*, 29 Cal. 4th at 225-26. However, nothing in the wording of the California UTSA suggests that KOT, as exclusive licensee, cannot bring suit for misappropriation if it can prove existence of the trade secrets, misappropriation, and damages as required under the statute. *See* Cal. Civ. Code § 3426 *et seq*.[17] The court finds that an analogy to patent law in this context is appropriate. The California Supreme Court had stated that, "[i]t appears indisputable that trade secrets are a form of property." *Cadence*, 29 Cal. 4th at 224. Given the vast differences between various intellectual property rights, analogy to general intellectual property law is often misguided. *See id.* at 224-26. Here, however, the court finds that there is significant overlap in issues concerning contractual licensing and assignment of patents and trade secrets. Thus, patent law "provide[s] the best guidance" on the issue. *See Denison*, 212 U.S.P.Q. at 605.

Abbott granted KOT "a perpetual, royalty-free, exclusive, irrevocable, worldwide license, with the right to sublicense" the Abbott "Know-How." AKA at 5 ¶ 5.2. In effect, Abbott granted to KOT all significant indicia of ownership over the Know-How, including any related trade secrets. "In determining whether a grant of all substantial rights was intended, it is helpful to look at what rights have been retained by the grantor, not only what was granted." *Vaupel Textilmaschinen KG v.*

---

[16] *See Bus. Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 1452, 1458 (S.D.N.Y. 1987) (denying motion to dismiss a trade secrets misappropriation claim based on standing because the claimant was granted "exclusive use" of the alleged trade secrets). The district court here did not offer any reasoning as to why "exclusive use" was sufficient for standing. Its reasoning may have involved the role of ownership in establishing standing. *See infra*, note 16.

[17] In the context of the California UTSA, it is clear that ownership of the trade secret is sufficient to establish standing. *See, e.g. Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941 (N.D. Cal. 2003) (Patel, J.). However, California courts have not yet addressed whether ownership of the trade secret is *necessary* to establish standing. *See State Farm Mut. Auto. Ins. Co. v. Wier*, WL 2988429 (Cal. Ct. App. 2004) at n.15. Only the Fourth Circuit has directly addressed the issue. *DTM Research, L.L.C. v. AT & T Corp.*, 245 F.3d 327, 330-33 (4th Cir. 2001) (concluding that the traditional trade secret ownership requirement for standing is not imported into the Maryland UTSA); *see also Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 483 (5th Cir. 2002) (granting summary judgment on other grounds, but stating in dicta that "there is some question as to whether [the claimant] has standing, as a non-owner, to assert a [Louisiana] UTSA claim").

1  *Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (finding that patent licensing
2  agreement transferred sufficient rights that patent licensee could be treated as assignee). Here, it
3  appears that Abbott retained only residual rights. The court finds that because KOT was granted "all
4  substantial rights" to the Know-How (for application outside the Application Field), it is, for
5  purposes of standing, an assignee. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d
6  1016, 1017 (Fed. Cir. 2001) (finding that an exclusive licensee holding "all substantial rights" in a
7  patent has the right to bring suit for infringement of the patent without joining patent owner as co-
8  plaintiff).

9          **c.  Conclusion**

10      KOT must, at a minimum, establish that it possesses the trade secrets at issue. *See DTM*
11  *Research*, 245 F.3d at 331 (while claimant is not required to prove ownership of trade secrets to
12  sustain cause of action under Maryland UTSA, he must prove possession of secrets). The
13  evidentiary gap in KOT's alleged chain of title, from Jomed N.V. or Jomed GmbH to Abbott,
14  currently leaves KOT with insufficient evidence to establish possession of the alleged trade secrets.
15  Counterdefendants are therefore entitled to summary judgment on KOT's cause of action for trade
16  secret misappropriation absent KOT successfully addressing this deficiency.

17  **C.  KOT's Fifth Counterclaim for Correction of Inventorship**

18      STC contends that by virtue of its patent assignment to Paragon, KOT lacks standing to
19  assert a claim for correction of inventorship, as it no longer holds a pecuniary interest in the Biflex
20  technology. Mot. at 12-13. KOT asserts that the "Asset Purchase Agreement and Patent
21  Assignment" between KOT and Paragon did not assign all of KOT's patent rights but only those
22  associated with medical applications. Opp'n at 20.

23      The court finds that the wording of the KOT-Paragon Agreement is clear and unambiguous.
24  The agreement states that KOT "desires to sell, transfer, assign, convey, and deliver the Rights to
25  Paragon. . . except all 'Kentucky Oil Rights.'" KPA ¶ 3. "For the purposes of this Agreement,
26  Kentucky Oil Rights shall be defined as all non-medical applications as well as applications for
27  polymer-based stents, including without limitation biodegradable stents." KPA ¶ 5. It is clear from
28  the agreement that KOT has sufficient pecuniary interest to seek correction of inventorship of STC's

patents. The court finds no reason to deviate from the reasoning of its April order.[18] The counterdefendants' motion for summary judgment on KOT's cause of action to correct patent inventorship is therefore denied.

### III.   ORDER

For the foregoing reasons, the court:

1. grants counterdefendants' motion to strike the hearsay statements in Pisano Decl. ¶¶ 7, 12, 14;

2. grants counterdefendants' motion to strike Pisano Decl., Exs. 3-5;

3. denies counterdefendants' motion for summary judgment on KOT's third counterclaim for misappropriation of trade secrets subject to KOT's successfully addressing the authenticity issue; and

4. denies counterdefendants' motion for summary judgment on KOT's fifth counterclaim for addition of Besselink as co-inventor of STC's patents.

DATED:    12/18/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[18] The court noted in its April order that "[i]f Besselink were added as a co-inventor on the STC applications, as Besselink's assignee, KOT would share in a market from which it has been allegedly excluded. KOT's 'concrete financial interest' in the outcome would satisfy both Article III and section 256." Docket no. 65 at 19.

**Notice of this document has been electronically sent to:**

**Counsel for Memry:**
| | |
|---|---|
| Andrew C. Ryan | ryan@cantorcolburn.com |
| William J. Cass | wcass@cantorcolburn.com |
| Benjamin J. Holl | benjamin.holl@dbr.com |
| Charles A. Reid, III | charles.reid@dbr.com |

**Counsel for STC:**
| | |
|---|---|
| Nancy J. Geenen | ngeenen@foleylaw.com |
| David B. Moyer | dmoyer@foley.com |
| Kimberly K. Dodd | kdodd@foley.com |

**Counsel for KOT:**
| | |
|---|---|
| Michael H. Bierman | mbierman@luce.com |
| Nicola A. Pisano | npisano@luce.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     12/18/06                              /s/ JH
                                                         **Chambers of Judge Whyte**