*E-filed 1/4/07*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEMRY CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>KENTUCKY OIL TECHNOLOGY, N.V., PETER BESSELINK, MEMORY METALS HOLLAND, B.V.,<br><br>    Defendants.<br>_____<br>KENTUCKY OIL TECHNOLOGY, N.V.,<br><br>    Counterclaimant,<br><br>    v.<br><br>MEMRY CORPORATION and SCHLUMBERGER TECHNOLOGY CORPORATION,<br><br>    Counterdefendants.<br>_____ | Case No. C04-03843 RMW (HRL)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART STC'S MOTION TO COMPEL PRODUCTION OF COMMUNICATIONS WITH VAN MOORLEGHEM; (2) GRANTING STC'S MOTION TO COMPEL DISCLOSURE OF DAMAGES; AND (3) GRANTING IN PART AND DENYING IN PART STC'S MOTION FOR SANCTIONS**<br><br>Re: Docket Nos. 236, 238, and 239 |

On January 4, 2007, this court heard the following discovery motions:

(1) Counterdefendant Schlumberger Technology Corporation's (STC) motion to compel Kentucky Oil Technology, N.V. (KOT) to produce communications with Wilfried van Moorleghem; (2) STC's motion to compel KOT to more fully disclose its anticipated damages;

and (3) STC's motion for sanctions. Based on the papers submitted, and the arguments of counsel, the court issues the following order.

## BACKGROUND

Peter Besselink is the reputed father of "Biflex technology," with patent applications and publications to his name.[1] Besselink and companies with which he has been affiliated, including Memory Metal Holland, B.V. (MMH) and United Stenting, Inc., are KOT's predecessors in interest in this action.

In 1998 Besselink began a collaboration with Memry Corporation (Memry) to develop larger versions of the Biflex technology. During that partnership, Memry allegedly acquired confidential information from KOT's predecessors in interest, along with restrictions on the use and dissemination of that information.

Later, Memry and STC partnered to develop bistable technology. The partnership resulted in several patents ultimately assigned to STC.

KOT now alleges that Memry divulged Besselink's (now KOT's) proprietary trade secret information to STC. In 2003, Besselink wrote to Memry accusing it of misappropriation of technology, and requesting to be listed as a co-inventor of the patents filed on behalf of Memry and STC. Memry responded proactively by suing KOT for, inter alia, a declaratory judgment that Memry did not convey or misappropriate trade secrets from KOT's predecessors in interest. KOT counterclaimed against Memry and STC, seeking, inter alia, damages for trade secret misappropriation and a finding that it was co-inventor of STC's patented technology.

On August 29, 2006, this court heard four discovery motions (two brought by KOT, two by STC) and then issued a lengthy order on September 6. The order required, inter alia, KOT to produce fourteen documents that it had withheld from production on grounds of privilege, despite the fact that Wilfried van Moorleghem was a recipient. The court was not satisfied by KOT's showing that van Moorleghem served as a translator or the functional equivalent of an

---

[1] "Bistable" cells are capable of assuming a stable collapsed state and a stable expanded state. Expandable tubes made of bistable cells, called "stents," can be placed in passageways, such as arteries, to prevent collapse or blockage.

2

1  employee. Since he was therefore a mere third party, any attorney-client privilege was waived
2  with respect to communications involving him.
3      On September 13, KOT filed a "Request for Augmentation of Record and
4  Reconsideration of Portion of September 6, 2006 Order." In that submission, it was revealed
5  for the first time that van Moorleghem had a substantial financial interest in the outcome of the
6  litigation. When this court made no ruling on that request, KOT filed an objection to the
7  discovery ruling on September 18, with Judge Whyte. On September 27, Judge Whyte
8  overruled the objection but implied in a footnote that the request was still pending before Judge
9  Lloyd. Based on that footnote, KOT refused to turn over the fourteen documents or allow
10 Besselink and van Moorleghem to be deposed about certain communications involving van
11 Moorleghem. On November 16, this court issued an order denying the reconsideration and
12 augmentation request as moot. On November 17, KOT reportedly produced the fourteen
13 documents.

## DISCUSSION

**A.     Motion to Compel Van Moorleghem Communications**

16 STC styles this motion as a "second motion" for a "second order" compelling production
17 of communications involving Wilfried van Moorleghem that have been withheld based on
18 attorney-client privilege or work product doctrine. At the outset, the court rejects the
19 suggestion that the precise issues before it now have already been litigated and decided.
20 When the motion was first filed, the court had not yet issued its order declaring moot
21 KOT's Request for Augmentation and Reconsideration, so the parties were still fighting over the
22 fourteen documents addressed in the court's September ruling. As the first subsection of STC's
23 motion pertains to those fourteen documents, it is now moot. The second subsection seeks van
24 Moorleghem communications produced after the action's filing date (such that the
25 communications are not on any privilege log), while the third subsection seeks deposition
26 testimony regarding the van Moorleghem communications.
27 The parties had previously agreed that they would not log documents created after May
28 14, 2004 constituting "communications between counsel of record in this case and their

3

respective clients," nor would they log "the work product of counsel of record."

1. Post-Filing Communications

The court's September 6 ruling that KOT could not withhold the 14 van Moorleghem documents was premised on the record before it then. The record has changed. KOT has now shown that van Moorleghem is the functional equivalent of an employee. Thus, his presence does not destroy KOT's attorney-client privilege.

For the federal common law attorney-client privilege to apply, (1) legal advice must be sought (2) from a professional legal advisor in his capacity as such, and (3) the communications relating to that purpose (4) must be made in confidence (5) by [or to] the client. *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989). Generally, disclosure to third parties waives the attorney-client privilege, but there is an exception for independent contractors and other third parties who are functional equivalents of employees. Federal courts have held that "a detailed factual showing" is needed to show that a third party is a representative of the client, or functionally equivalent to the corporation's employee, thus including that third party within the protection of the attorney-client privilege. See, e.g., *Energy Capital Corp. v. U.S.*, 45 Fed. Cl. 481, 492 (2000). Courts consider the policy behind corporate attorney-client privilege determinations, as enunciated by the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383 (1981). See *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994); *Admiral Ins.*, 881 F.2d at 1493. The Court in *Upjohn* looked to which of the corporate client's agents possessed the relevant information the attorney needed to render sound legal advice. *Upjohn*, 449 U.S. at 389-90.

This court's September 6 ruling stated: "Although KOT claims that van Moorleghem has advised KOT and Besselink in business matters, it presents no specific evidence of his duties in this capacity. The declarations submitted by Besselink and van Moorleghem contain no detailed facts regarding van Moorleghem's integration into the corporate structure or his possession of any information not known by other persons at KOT. There is no documentation regarding the amount of time devoted to his "consulting" activities or his physical location when performing his alleged duties. Nor is there any showing that third

4

parties recognize him as a representative of KOT.  The combination of all of these factors, plus the "unpaid" nature of the advice, defeats the functional equivalence argument."

The court now has a better understanding of van Moorleghem's duties and integration into the corporate structure.  KOT has presented, in declarations and deposition testimony, the following evidence his about relationship with KOT.  Since the formation of KOT, van Moorleghem has served as an advisor and agent for KOT and Besselink in business matters and in the dispute with STC and Memry.  He worked to commercialize the Biflex technology in the medical device field since at least 1998.  Documents submitted under seal to the court detail van Moorleghem's significant involvement in KOT's various negotiations over the years.

Van Moorleghem has also been intimately involved in the present lawsuit.  He helped gather information to be used in the lawsuit.  Until this court's September 6 order, KOT's counsel and Besselink copied him on all communications about the lawsuit.  KOT's counsel also communicated directly with him.  Since the inception of the lawsuit, KOT had represented that van Moorleghem is an authorized representative of KOT, and KOT's counsel always treated him as a client representative.  He will be KOT's 30(b)(6) designee for many deposition topics.

As for the other factors enunciated in the September 6 order, the evidence is mixed. KOT does not pay van Moorleghem a salary, but he has a financial interest in KOT.  Various third parties have dealt with him as a representative of KOT.  KOT admits that van Moorleghem does not work physically from KOT's offices, because those are located at Besselink's home, and that he does not keep track of the time he spends working for KOT.  KOT asserts that it has no employees, and that therefore the factor about possessing information not known to other employees is inapplicable.  However, KOT makes no attempt to show that van Moorleghem knows things that Besselink does not.

Based on the totality of the relationship between van Moorleghem and KOT (and its principal, Besselink), the court finds that van Moorleghem is the functional equivalent of a KOT employee such that attorney-client communications involving him are and remain privileged.  Admittedly, KOT is not a traditional company and van Moorleghem is not a

5

1 traditional employee, or even a traditional consultant. He should be characterized as the
2 functional equivalent of an executive, due to his high-level oversight of the company and his
3 interest in the company's financial health. The application here of the functional equivalence
4 exception to third-party waiver is in line with the policies underlying the attorney-client
5 privilege, including allowing attorneys to discover the information they need to successfully
6 advocate on behalf of their clients.

7 Because attorney-client privilege should by itself shield from discovery any legal-
8 advice-related communications between van Moorleghem and KOT's counsel, the court does
9 not analyze the work product protection claimed by KOT. The court concludes that
10 communications between KOT's counsel and van Moorleghem, and communications between
11 KOT's counsel and Besselink where van Moorleghem is copied, need not be turned over or
12 logged. Any communications involving van Moorleghem that do not also involve an attorney,
13 but that are responsive to earlier requests for production, should either be produced by January
14 11, 2007 or, if KOT seriously contends that some privilege shields such documents, logged on a
15 privilege log by January 11, 2007.

16 2. Deposition Testimony

17 STC complains that, at Besselink's and van Moorleghem's October depositions, neither
18 would answer questions regarding van Moorleghem's prior communications with KOT and its
19 counsel. Further, KOT's counsel instructed Besselink not to answer questions concerning his
20 communications with van Moorleghem occurring outside the presence of counsel, and refused
21 to allow inspection of notes taken by van Moorleghem during Besselink's deposition. KOT's
22 objections were based on its contentions that van Moorleghem is part of the "control group" of
23 KOT, functions as a client representative, and is included within KOT's attorney-client
24 privilege.

25 For the reasons described in the previous section, the court finds that communications
26 between van Moorleghem and KOT's counsel (or communications between KOT's counsel and
27 Besselink copied to van Moorleghem) are privileged. Therefore, Besselink and van
28 Moorleghem need not answer deposition questions about such communications. However,

KOT has not convinced the court that any privilege protects the mid-deposition communications between van Moorleghem and Besselink which did not take place in the presence of counsel. Van Moorleghem and Besselink may be deposed about those conversations. As for van Moorleghem's notes, KOT asserted at the hearing that they are shielded by work product protection. If so, KOT must produce and serve a privilege log for the notes by January 11, 2007. The log must be sufficiently detailed to demonstrate all of the elements of federal work product protection. Finally, for present purposes the court declines to order KOT to disclose information about its current attorney fee arrangements.

**B.    Motion to Compel Disclosure of Damages**

STC wants "a computation of any damages" counterclaimant KOT seeks from STC. Fed. R. Civ. P. 26(a) provides in relevant part that "a party must, without awaiting a discovery request, provide to other parties...a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered." KOT proposes postponing a specific computation until expert reports are due. KOT originally defended its failure to be more specific in its initial damage disclosures by saying that it was about to produce an expert report that would have all the desired information. But, then Judge Whyte postponed the expert report deadline. KOT then served a Second Amended Disclosure ("SAD"), with more description about damages but still no solid computations. On the same day, KOT filed a supplemental declaration in support of its opposition to this motion, stating that the SAD "sets forth Kentucky Oil's best understanding of its damages claim pending completion of its damages expert's analysis." STC is not content with this, and continues to seek immediate disclosure of specific categories of damages, dollar amounts, and methodologies used, as well as identification or production of the supporting documentation. The issue before the court is whether or not the SAD satisfactorily discharges KOT's duties under Rule 26.

7

"Rule 26 does not define the specificity required in initial damages disclosures. Thus, 'guidance as to the adequacy of the disclosures must be gleaned from Rule 26(a)'s purpose: to 'accelerate the exchange of basic information' that is 'needed in most cases to prepare for trial or make an informed decision about settlement.' *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal.2003). Early disclosure also functions to assist the parties in focusing and prioritizing their organization of discovery. *Id.* Given these purposes, a plaintiff should provide more than a lump sum statement of the damages allegedly sustained. *Id.* The 'computation' of damages required by Rule 26(a)(1)(C) contemplates some analysis. For example, in a claim for lost wages, there should be some information relating to hours worked and pay rate. *Id.* (citations omitted)." *Sanchez v. Hendrick's Hallowell Chevrolet*, 2006 WL 2884778 (E.D. Cal. October 10, 2006).

Fed. R. Civ. P. 26(a)(1)(E) states that "[a] party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case." See also Moore's Federal Practice § 26.22[4][c] (a claimant is obliged to "disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be.") On the other hand, a party may not need to disclose the method used to calculate a dollar amount where that method is properly the subject of expert evidence and the parties will be turning over expert evidence in the future. *Id.*, citing *Pine Ridge Recycling, Inc. v. Butts County*, 889 F.Supp. 1526, 1527 (M.D. Ga. 1995).

KOT's SAD sets forth several categories of potential damages (lost licensing revenue, increased business expenses, unjust enrichment), but utterly fails to state a dollar amount for any damages category, let alone a method of computation. The closest KOT gets to assigning a numerical value to damages is its statement that it "expects that the evidence will show that the license for each [industry] would have a comparable value to that obtained under [an earlier] agreement, i.e. more than $100 million for medical applications and more than $100 million for oilfield applications." Such a vague estimate, this late in the game, does not fulfill KOT's

obligations under Rule 26. It appears that KOT has simply refused to put in the work needed to produce preliminary estimates of its projected damages.

KOT contends that the information needed to calculate damages was contained exclusively in documents produced recently by STC, and that expert analysis of those documents was necessary to convert them into a damages figure. The court is not convinced. Perhaps the documents withheld by STC until October 2006 bear on some components of KOT's damages, but that does not give KOT license to completely defer all damages calculations.

The court ORDERS KOT to produce an amended damages disclosure statement containing a specific numerical value for each category of damages it claims, together with all evidentiary materials underlying such computation, no later than January 11, 2007. If KOT contends in good faith that the methodology used to calculate the total is properly the subject of forthcoming expert reports, KOT may defer disclosure of methodology until its January 19 expert report. Finally, if KOT has already produced to STC all of the documents supporting its damages projections, KOT must clearly identify, by number, the relevant documents.

**C.    Motion for Sanctions**

STC moves the court to sanction KOT for the same conduct that is the predicate of the first two motions discussed above, plus some additional claimed misfeasance. STC accuses KOT of: (1) unjustifiably withholding information about van Moorleghem communications; (2) not producing all documents relating to communications with Abbott Laboratories (Abbott); and (3) insufficiently disclosing damages.

The court finds that KOT's position with respect to van Moorleghem was not so unreasonable as to warrant sanctions. Nor are the procedural issues raised by STC so compelling as to merit sanctions.

As for the Abbott documents, this court's September 6 order required KOT to supplement its response to an STC interrogatory that sought all "documents relating to communications between KOT and Abbott." By comparing KOT's subsequent production with documents produced by Abbott pursuant to a subpoena, STC determined that some documents

9

**United States District Court**
For the Northern District of California

were missing, including draft patent assignments and communications between counsel. STC argues that it is prejudiced by these failures because depositions with Abbott employees have come and gone without this information.

KOT responds that the two draft patent assignments at issue were not in KOT's possession, custody, or control. Further, KOT pleads excusable inadvertence with respect to four emails exchanged between KOT's and Abbott's counsel. KOT explains that its counsel had trouble manually searching his email for all communications, and basically argues "no harm no foul" because KOT produced other emails that contained all the substantive information from those missing emails.

In reply, STC states that KOT has mischaracterized the dispute over the Abbott documents. STC apparently pointed out *some* missing Abbott documents to illustrate KOT's failure to turn over *all* Abbott documents.

At the hearing, KOT's counsel represented to the court that KOT had in fact, made a reasonably diligent search for all Abbott documents in its possession, custody, or control. Considering the record before it, the court declines to award sanctions based on the Abbott document dispute.

For the same reasons discussed above in the context of the motion to compel damages disclosures, the court finds that KOT was not substantially justified in its failure to provide adequate disclosures. STC shall submit an itemized declaration, by January 11, listing and explaining the costs incurred as a result of KOT's failure to provide adequate disclosures. KOT may file an opposition to any claimed expenses by January 13. STC may file a reply by January 14. The court will then consider monetary sanctions and issue a supplemental order.

**IT IS SO ORDERED.**

Dated:   1/4/07

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

Michael H. Bierman mbierman@luce.com,

William J. Cass WCass@CantorColburn.com,

Kimberly K. Dodd kdodd@foley.com, rbarcena@foley.com

Nancy J. Geenen ngeenen@foleylaw.com, rbarcena@foleylaw.com

Benjamin J. Holl benjamin.holl@dbr.com, jeanette.juniel@dbr.com

Thomas J Mango tmango@cantorcolburn.com

David B. Moyer dmoyer@foley.com, jpung@foley.com; smurthy@foley.com; mlagdameo@foley.com

Nicola A. Pisano npisano@luce.com

Charles A. Reid , III charles.reid@dbr.com, kristi.baughman@dbr.com; april.miller@dbr.com; chris.lorange@dbr.com; ioana.mondescu@dbr.com

Andrew C Ryan Ryan@CantorColburn.com,

Jeffrey David Wexler jwexler@luce.com, tdelpomar@luce.com

* Counsel are responsible for providing copies of this order to co-counsel who have not registered for e-filing.

Dated:   1/4/07                              /s/  JMM
                                        Chambers of Magistrate Judge Lloyd