1  Michael H. Bierman, State Bar No. 89156
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2  601 South Figueroa, Suite 3900
   Los Angeles, California 90017
3  Telephone No.: 213.892.4992
   Fax No.: 213.892.7731
4

5  Nicola A. Pisano, State Bar No. 151282
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   Del Mar Gateway, 11988 El Camino Real, Suite 200
6  San Diego, California 92130-2594
   Telephone No.: 858.720.6320
7  Fax No.: 858.523.4326

8  Attorneys for Defendant and Counterclaimant
   Kentucky Oil Technology, N.V. and Defendants
9  Peter Besselink and Memory Metal Holland, B.V.

10                 UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

| | |
|---|---|
| 13  MEMRY CORPORATION, | Case No. CV 04-03843 RMW (HRL) |
| 14       Plaintiff, | **KENTUCKY OIL'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SCHLUMBERGER TECHNOLOGY CORPORATION'S MOTION TO COMPEL [Docket 398]** |
| 15       v. | |
| 16  KENTUCKY OIL TECHNOLOGY, N.V., PETER BESSELINK, MEMORY METALS HOLLAND, B.V., | |
| 17 | Date:    March 13, 2007 |
| 18       Defendants. | Time:    10:00 a.m. Ctrm.:   2 |
| 19  KENTUCKY OIL TECHNOLOGY, N.V., | The Honorable Howard R. Lloyd, Magistrate Judge |
| 20       Counterclaimant, | |
| 21       v. | |
| 22  MEMRY CORPORATION and SCHLUMBERGER TECHNOLOGY | |
| 23  CORPORATION, | |
| 24       Counterdefendants. | |

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
Page

3 INTRODUCTION .................................................................................................. 1

4 BACKGROUND FACTS ....................................................................................... 3

5      A.    The Jomed Evaluation. ................................................................ 3

6      B.    Kentucky Oil's Document Production. ...................................... 5

7           1.    Production of Original Documents. ............................... 5

8           2.    Production of Document with Red Highlighting. ......... 8

9           3.    Kentucky Oil's Failure to Produce Copies of Two E-Mails. ..................... 8

10      C.    Kentucky Oil's Review of Computers to Produce Documents. ............................ 8

11 LEGAL ARGUMENT ........................................................................................... 10

12 I.    LUCE FORWARD AND MR. PISANO SHOULD NOT BE COMPELLED TO
     PRODUCE MR. PISANO'S EVALUATION OF THE BIFLEX PATENT
13    PORTFOLIO REVIEW FOR JOMED. .......................................................... 10

14      A.    The Patent Portfolio Review is Protected by the Attorney-Client Privilege......... 10

15      B.    The Patent Portfolio Review is Protected by the Work Product Doctrine. .......... 11

16      C.    STC has Not Shown Good Cause for Obtaining the Patent Portfolio
17          Review.................................................................................... 12

     D.    Luce Forward and Mr. Pisano Should Not be Compelled to Produce
18          Documents Reviewed in Connection with the Patent Portfolio Review.............. 13

19 II.    KENTUCKY OIL HAS ALREADY PRODUCED ITS ORIGINAL HARD COPIES
20      FOR INSPECTION TO THE EXTENT REQUESTED BY STC. ................... 14

21 III.    STC HAS NOT SHOWN GOOD CAUSE TO REQUIRE KENTUCKY OIL TO
     PRODUCE ITS HARD DRIVES FOR INSPECTION. ................................. 15

22      A.    The Undisputed Evidence Shows that Kentucky Oil Searched Electronic
23          Media to Locate Documents for Production. ....................................... 15

24      B.    Dutch and Belgian Law Bar the Export of the Hard Drives to the United
         States. .................................................................................... 17

25      C.    STC Failed to Meet and Confer with Regard to the Potential Applicability
         of the Amendments to the Federal Rules of Civil Procedure Concerning
26          Electronic Discovery or the Use of an Independent Consultant. .................... 18

27 CONCLUSION ...................................................................................................... 19

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Admiral Ins. Co. v. United States Dist. Ct.,*
881 F.2d 1486 (9th Cir. 1989) ........................................................... 11

*Ameriwood Indus., Inc. v. Liberman,*
2006 WL 3825291 (E.D. Mo. 2006) ................................................. 16

*Gilliland v. Geramita,*
2006 WL 2642525 (W.D. Pa. Sept. 14, 2006) .................................. 11

*Hewlett Packard Co. v. Bausch & Lomb Inc.,*
115 F.R.D. 308 (N.D. Cal. 1987) ............................................... 10, 11

*Hobley v. Burge,*
433 F.3d 946 (7th Cir. 2006) ........................................................... 12

*In re Grand Jury Subpoena,*
357 F.3d 900 (9th Cir. 2004) ........................................................... 11

*In re Novellus Sys. Inc. Derivative Litig.,*
2007 WL 46076 (N.D. Cal. Jan. 5, 2007) ......................................... 15

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.,*
2007 WL 121426 (E.D.N.Y. Jan. 12, 2007) ..................................... 18

*In re: Sealed Case,*
146 F.3d 881 (D.C. Cir. 1998) ......................................................... 12

*Simon Property Group L.P. v. mySimon, Inc.,*
194 F.R.D. 639 (S.D. Ind. 2000) ..................................................... 16

*Tenneco Packaging Specialty & Consumer Prods., Inc. v. S.C. Johnson & Son, Inc.,*
1999 U.S. Dist. LEXIS 15433 (N.D. Ill. Sept. 14, 1999) ................. 11

*United States v. Adlman,*
134 F.3d 1194 (2d Cir. 1998) .......................................................... 12

*United States v. Roxworthy,*
457 F.3d 590 (6th Cir. 2006) ........................................................... 12

## STATUTES

Belgian law of December 8, 1992 in relation to the Processing of Personal Data as modified by the law of December 11, 1998 implementing Directive 95/46/EC, Art. 1, § 1 ......... 17

Personal Data Protection Act enacted by the Upper House of the Dutch Parliament on July 3, 2000, Art. 1, § a .................................................................................................... 17

**TABLE OF AUTHORITIES**
(cont'd)

Page

Belgian law of December 8, 1992 in relation to the Processing of Personal Data as
modified by the law of December 11, 1998 implementing Directive 95/46/EC, Arts. 21-22 ....... 17

Personal Data Protection Act enacted by the Upper House of the Dutch Parliament on July
3, 2000, Arts. 76-77................................................................................................................ 17

**RULES**

Cal. R. Prof. Cond. 5-210(C) ....................................................................................................... 4

Fed. R. Civ. P. 26(b)(3)................................................................................................. 11, 12, 13

Fed. R. Civ. P. 26(f) .......................................................................................................... 18

Fed. R. Civ. P. 26(f)(3)....................................................................................................... 18

Fed. R. Civ. P. 30(b)(6)........................................................................................ 5, 7, 8, 15, 17

**TREATISES**

8 C. Wright, A. Miller & R. Marcus, *Federal Practice & Procedure*,
    § 2024 (2d ed. 1994) ................................................................................................ 11, 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3      The motion to compel filed by counterdefendant Schlumberger Technology Corporation

4  ("STC") raises two general issues.  First, STC seeks to compel Luce, Forward, Hamilton &

5  Scripps LLP ("Luce Forward") and attorney Nicola A. Pisano to produce a document that Mr.

6  Pisano prepared for another client of Luce Forward – Jomed N.V. – even though that document

7  (1) is protected by the attorney-client privilege and the work product doctrine and (2) was never

8  disclosed to defendant and counterclaimant Kentucky Oil Technology, N.V. ("Kentucky Oil").

9      Second, STC seeks to compel Kentucky Oil to produce unspecified "original" documents

10  and computer hard drives.  Although STC accuses Kentucky Oil of a wholesale failure to produce

11  many relevant documents, STC's motion identifies only *five* separate documents (included in six

12  exhibits) – three documents (four exhibits) of which Kentucky Oil produced in a form claimed by

13  STC to be unsatisfactory, and the remaining two of which were produced by a third party but not

14  by Kentucky Oil.[1]

15      Kentucky Oil has now produced the originals of the three documents (four exhibits)

16  identified by STC in its motion.[2]  At the deposition of Peter Besselink on January 11, 2007 –

17  nearly four weeks before STC filed its motion – Kentucky Oil produced two of these documents

18  (three exhibits – Exhibit 357 is a better copy of Exhibit 356).  *See* Exhibits 356-58 (Declaration of

19  David Moyer ("Moyer Decl."), Exs. R-T).  STC seeks to conceal the fact that the originals of these

20  exhibits have already been produced.  Instead, STC argues that these documents "are missing

21  dates and other critical information from the margins, preventing STC from obtaining discovery of

22  original documents that appear to belie KOT's contention that Peter Besselink only 'discovered'

23

---

24  [1]    The Declaration of David Moyer ("Moyer Decl.") attaches no fewer than 13 additional documents produced by Kentucky Oil that are not mentioned in STC's brief, presumably to imply that the issues addressed by STC's motion go beyond the six documents referred to therein.  *See*

25  Moyer Decl., Exs. I, K, L, P, Q, U, V, W, X, QQ, RR, SS, TT.  As discussed below, such documents do not support STC's motion.

26

27  [2]    On February 14, 2007, Kentucky Oil produced a color copy of a document that, when printed in black ink, did not show text highlighted in red (Exhibits 359, 368 (Moyer Decl., Exs. I, J)).  STC misstates the significance of this document, *see* Docket 398 at 5:17-28, but the parties'

28  factual dispute is immaterial because the document has been produced.

1    STC's patent prosecution activities in 2003 and therefore to support STC's contention that KOT's

2    claims are barred by the statute of limitations."  Docket 398 at 2:7-14.  *See id.* at 5:1-8.  Because

3    STC has received Kentucky Oil's originals of these documents, it is well aware that there were no

4    dates or other critical information missing from the margins of the originals of these documents.[3]

5        STC seeks to bootstrap Kentucky Oil's failure to produce two e-mails – from 2000 and

6    2003, respectively – that were produced by a third party[4] into a basis for requiring Kentucky Oil to

7    make a number of computer hard drives available for inspection.  STC does not and cannot cite

8    any authority that supports compelling a party that has made a reasonable search for responsive

9    documents (including a search of computer hard drives) to make its hard drives available for

10   inspection based upon the failure to locate two e-mails sent well before this lawsuit commenced.

11       Kentucky Oil notes that STC has brought this motion to compel the production of

12   "original" documents and computer hard drives without complying with its meet-and-confer

13   obligations.  At depositions in January 2007, Kentucky Oil's counsel repeatedly urged STC's

14   counsel to send a letter if STC believed that Kentucky Oil had failed to produce the originals of

15   any documents.  Counsel for STC never sent such a letter.  Had STC's counsel sent such a letter,

16   counsel for Kentucky Oil would have informed him that the two "original" documents towards

17   which this motion is directed – Exhibits R, S, and T to the Moyer Declaration – had already been

18   produced on January 11, 2007.  Furthermore, prior to bringing this motion to compel, STC

19   repeatedly demanded that Kentucky Oil produce its hard drives ***to STC***, but never proposed that

20   the hard drives be provided to an independent consultant for review.

21       Finally, Kentucky Oil notes that, although STC seeks to justify its demand for electronic

22   documents by reference to only two documents produced by third parties but not by Kentucky Oil,

---

[3]    Furthermore, the exact date on which these searches were run is not important.  Because the
23   searches identified United States Patent No. 6,450,407, *see* Moyer Decl., Exs. R, S, which was
24   published on September 17, 2002, the searches were necessarily run after that date.  Because
     Kentucky Oil filed suit within three years of September 17, 2002, the statute of limitations inquiry
25   is unaffected by the precise date or dates of the searches.

26   [4]    STC greatly overstates the significance of these e-mails.  *See* Docket 398 at 2:14-17, 4:5-24.
     Because the alleged import of these e-mails is irrelevant to the issue presented by this motion –
27   *i.e.*, whether Kentucky Oil should be required to produce its hard drives for inspection – Kentucky
     Oil will not burden the Court with the deposition testimony refuting STC's contentions with
28   regard to these e-mails.

1   there are hundreds if not thousands of documents that STC has failed to produce, even though

2   such documents are included in e-mails produced by STC or counterdefendant Memry

3   Corporation ("Memry") or are referenced as attachments to such e-mails.  STC has produced a

4   large number of e-mails that are undated, presumably because of the manner in which STC

5   retrieved or printed such e-mails.  Kentucky Oil did not bring a motion to compel with regard to

6   such documents because it believed that such inadequacies are inherent in the litigation process.

7   Kentucky Oil respectfully requests that, in the event that the Court believes that Kentucky Oil's

8   failure to locate for production two e-mails sent three and six years ago justifies the production by

9   Kentucky Oil of its hard drives, the Court make its Order reciprocal and require STC to follow the

10  same procedures to retrieve electronic documents from its servers and the hard drives of the work

11  and home computers of its employees.

12                              **BACKGROUND FACTS**

13          A.      **The Jomed Evaluation**.

14          In 2003, Jomed N.V. engaged Mr. Pisano of Luce Forward to prepare a memorandum

15  concerning appropriate valuations of the patent assets of two of its subsidiary companies, Jomed

16  GmbH and Jomed Inc.  *See* Declaration of Nicola A. Pisano ("Pisano Decl."), ¶ 2.  Jomed N.V.

17  sought such a memorandum in anticipation of potential civil lawsuits directed at Jomed N.V.'s

18  Management Board regarding allegations that the company's funds had been misspent in

19  connection with the acquisition of certain technologies.  *See id.*

20          On April 24, 2003, Mr. Pisano sent a five-page memorandum to Randolf Von Oepen, the

21  Vice President, Intellectual Properties and Chief Technical Officer of Jomed GmbH (the "Patent

22  Portfolio Review"), copying the memorandum to Lars-Johan Cederbrent of Jomed N.V.  *See id.*,

23  ¶ 3.  The Patent Portfolio Review provides a valuation of and brief analysis concerning 12 patent

24  families belonging to Jomed GmbH and Jomed, Inc., including two paragraphs devoted to the

25  Biflex patent applications subsequently assigned to Kentucky Oil.[5]  *See id.*

26

27  _____

28  [5]      If the Court wishes, Kentucky Oil will provide the Court with the Patent Portfolio for *in camera* review, redacting the portions that discuss technology other than the Biflex Technology.

1    Jomed N.V. and its subsidiaries filed for bankruptcy on May 2, 2003.  *See id.*, ¶ 4, Ex. A.

2    According to the Jomed N.V. Bankruptcy Trustees' Second Public Report dated September 30,

3    2003:

4        On June 27 2003 the bankruptcy trustees served notice of liability on the full
         complement of incumbent and former managing directors of JOMED N.V. and the

5        latter's subsidiary companies and on the supervisory directors of JOMED N.V. for
         any and all losses (to be) suffered by JOMED N.V. due to mismanagement on the

6        part of the relevant managing directors and supervisory directors.  The bankruptcy
         trustees took this step in view of the fact that the deadline for filing claims under

7        the D&O insurance was imminent.

8        The bankruptcy trustees intend to launch an investigation into the causes
         underlying the bankruptcy of JOMED N.V. in October 2003.  They may come to

9        the conclusion, either in the course of this investigation or on its completion, that
         certain managing directors or supervisory directors are not liable or that other

10       natural persons or legal entities (e.g. the auditors) should be held liable.

11   *Id.*, Ex. A, at 4, ¶ 2.2.

12       The bankruptcy proceedings are ongoing.  *See id.*, ¶ 5, Ex. B (Fourteenth Public Report by

13   Bankruptcy Trustee dated February 9, 2007).

14       In 2003, Abbott purchased Jomed GmbH's assets, including the Biflex Technology.

15   According to Steven Kipperman of Abbott, Jomed showed the Patent Portfolio Review to Abbott

16   during the course of Abbott's due diligence.  *See* Deposition of Steven Kipperman at 28:16-17,

17   83:3 – 87:5 (Ex. D to Moyer Decl.).  ***The Patent Portfolio Review has never been disclosed to***

18   ***Kentucky Oil, nor have the contents of the document ever been disclosed to or discussed with***

19   ***Kentucky Oil personnel.***  *See* Pisano Decl., ¶ 6.  Kentucky Oil has no intention of offering

20   testimony from Mr. Pisano concerning the value of the Biflex Technology, let alone the valuation

21   provided in that document.  *See id.*

22       In a December 18, 2006 letter, counsel for STC claimed that because of Mr. Pisano's

23   involvement with, *inter alia*, the Patent Portfolio Review, he "will be a necessary fact witness at

24   trial" and demanded that Kentucky Oil confirm that "Mr. Pisano will not act as an advocate at

25   trial."  Moyer Decl., Ex. Y.  In a December 21, 2006 letter, Kentucky Oil disputed STC's

26   contention that Mr. Pisano is an appropriate fact witness and explained that, even if he were, Cal.

27   R. Prof. Cond. 5-210(C) allows an attorney-witness to act as trial counsel as long as the attorney

28   "has the informed written consent of the client."  Pisano Decl., Ex. C.

1    In a December 29, 2006 letter, counsel for Kentucky Oil explained that the Patent Portfolio

2    Review is protected by the work product doctrine because it "was prepared at the request of the

3    Jomed management Board at a time (1) when the Board's acquisition policies (unrelated to the

4    Biflex technology) were the subject of potential legal action against Jomed's management Board

5    and (2) contained opinions regarding validity, enforceability and potential infringement of certain

6    Jomed patents."  Moyer Decl., Ex. Z.

7         **B.**     **Kentucky Oil's Document Production**.

8              **1.**     **Production of Original Documents**.

9    In a January 5, 2007 e-mail, STC's counsel asked that Kentucky Oil's counsel make

10   available "[a]ll **original** KOT documents" for inspection and use during the Rule 30(b)(6)

11   deposition of Kentucky Oil scheduled to start on January 11, 2007.   Moyer Decl., Ex. OO.  Later

12   that day, Kentucky Oil's counsel asked STC's counsel to identify the Bates numbers of the

13   originals that STC would like to have available, noting that "[m]ost of the originals are in Europe"

14   and that "[i]t will be neither feasible nor productive to have all originals available here."  *Id.*

15   On January 7, 2007, STC's counsel sent Kentucky Oil's counsel an e-mail stating that

16   "[t]hough STC reserves its right to inspect the originals of all of KOT's documents, STC has a

17   particular need to inspect documents bearing handwriting (a partial list is attached hereto to

18   facilitate KOT's identification of the documents), documents in which information at the margins

19   was cut off during KOT's prior production, and all color originals that KOT previously produced

20   only in black and white."  *Id.*  The attached list identified about 160 documents, and the e-mail

21   itself identified several more documents.  *See id.*

22   At Mr. Besselink's deposition as an individual and as Kentucky Oil's Rule 30(b)(6)

23   designee on January 11, 2007, Kentucky Oil made available all of the original documents that it

24   had been able to locate and that were identified in the list of documents attached to STC's

25   counsel's e-mail of January 7, 2007 and in that e-mail.  *See* Pisano Decl., ¶ 9.  Mr. Besselink

26   testified at his January 11, 2007 deposition – in testimony not provided to the Court by STC – that

27   he had produced at that deposition to STC's counsel all of the original documents that he had been

28   able to locate:

1   Q.  Have you brought those original documents with you for this deposition?

2

3   A.  The original drawings of BiFlex?

   Q.  Yes.

4   A.  Yes, I brought them.

5   Q.  Where are they?

6   A.  The originals, I think in my car.

7                                    . . .

8   Q.  Are these the documents that you referred to as being in your car, that you thought were in your car?

9

10   A.  I thought I still had them in the car, but I already gave them to you.

11   **Q.  *Are there any other original documents that you brought with you for this deposition?***

12   **A.  *I think that you have asked for specific documents last time and I brought them except the two that I could not find.  So I think out of maybe eight or ten that you asked, you got eight or so.***

13

14   **Q.  *And what about any other original documents?***

15   **A.  *The other ones I could not find.  I was looking at home and I could not find.*  So they may have been transferred to Paragon.  Because I have sent them a lot of paper.**

16

17

18   Deposition of Peter Besselink ("Besselink Depo.") at 21:15 – 23:7 (emphasis added) (Ex. D to

19   Pisano Decl.).

20   The original documents made available at Mr. Besselink's January 11, 2007 deposition

21   included the only three "original" exhibits (*i.e.*, two documents, since two of the exhibits are

22   duplicates of one another) – Exhibits R, S, and T to the Moyer Declaration (Depo. Exs. 356-38).

23   *See* Besselink Depo. at 139:4 – 142:16 (Ex. D to Pisano Decl.).  STC's counsel examined Mr.

24   Besselink concerning these two "original" documents (Exhibits 356/357 and Exhibit 358) at his

25   deposition:

26   **Q.  *I'm going to continue with these original documents that you produced today, and the next is a document that previously – a copy of which previously was produced as Bates No. KO01076, which was Exhibit 358 to the van Moorleghem deposition.  And I've given you the original that you brought with you today* and then two copies, one for you and one for your counsel. . . .**

27

28

6

. . .

Q.  And does your original have the complete information or is it cut off too?

A.  It is not cut off.  In the printer it was like rotated.  This is the normal paper size in the Netherlands.  This is like – it's not cut off.

. . .

Q.  But the text on the left side of it appears to be cut off and I'm must trying to understand why that is.

A.  I think it came out of the – I don't know.  I don't know.

Q.  Did you print this document?

A.  Normally if it comes out of the printer, you can read the left side.  So it may be a copy and that I used a copy to write on.  I don't know.

. . .

Q.  ***Handing you the next of the documents you produced today, it's a one-page document bearing Bates KO01306, previously introduced as Exhibit 356 at the van Moorleghem deposition.*** . . .

Q.  And on the copy that was produced, there  was some information that was cut off in the left margin.  ***Do you see that information in your – in your – what you've brought as your original document?***

A.  Yes,

*Id.* (emphasis added) (Ex. D to Pisano Decl.).

Although STC argues with regard to these exhibits that "several of the 'original' documents were photocopies that had the same missing information as the copies KOT previously had produced," Docket 398 at 6:8-9, Mr. Besselink's testimony clearly shows that the documents produced were originals having Mr. Besselink's original handwriting on them.  *See* Besselink Depo. at 139:4 – 140:12 (Ex. D to Pisano Decl.).

At the January 2007 depositions of Mr. Besselink and Dr. van Moorleghem, STC's counsel made a number of requests for additional originals.  In response, counsel for Kentucky Oil asked counsel for STC to send him a letter identifying the original documents sought by STC and explaining the reason – other than making work for counsel for Kentucky Oil – why STC contended that Kentucky Oil should be required to produce originals.  *See* Deposition of Wilfried van Moorleghem as Kentucky Oil's Rule 30(b)(6) designee ("van Moorleghem Rule 30(b)(6)

Depo.") at 448:11-21, 506:23 – 507:16 (Ex. F to Pisano Decl.).  STC's counsel never sent such a letter, *see* Pisano Decl., ¶ 13, instead filing this motion to compel.

**2.     Production of Document with Red Highlighting**.

At Dr. van Moorleghem's deposition on October 25, 2006, it was determined that one of the documents produced by Kentucky Oil – Exhibit 368 (Ex. J to Moyer Decl.) had text highlighted in it that did not appear in the copy of the document produced by Kentucky Oil, so STC asked Kentucky Oil to produce the original of that document.  *See* Deposition of Wilfried van Moorleghem as an individual ("van Moorleghem Depo.") at 625:21 – 630:14 (Ex. E to Pisano Decl.).  When Mr. Besselink brought the original copy of the document to his deposition on January 11, 2007, Kentucky Oil's counsel discovered that it was unclear on the original what text was highlighted in red, either.  *See* Pisano Decl., ¶ 14.  On February 14, 2007, Kentucky Oil produced to STC a color copy of the document which showed the red highlighting.  *See id.*, ¶ 14, Ex. G.

**3.     Kentucky Oil's Failure to Produce Copies of Two E-Mails**.

STC has identified two e-mails that were produced by third-party Lumenous Device Technologies ("LDT") but not by Kentucky Oil: (1) an October 16, 2000 e-mail from Mr. Besselink to George Shukov, Brian Moore, Ton Van Roermund, and Dr. van Moorleghem, *see* Moyer Decl., Ex. N; and (2) a March 6, 2003 e-mail from Mr. Besselink to Dr. van Moorleghem, Messrs. Shukov and Moore, and Todd Dickson, *see id.*, Ex. O.  Luce Forward attorneys produced documents on behalf of LDT.  *See* Pisano Decl., ¶ 15.

**C.     Kentucky Oil's Review of Computers to Produce Documents**.

Mr. Besselink testified that he searched his new computer and his old computers for files and documents that were responsive to STC's document requests.  *See* Besselink Depo. at 30:19 – 32:24 (Ex. D to Pisano Decl.).

Similarly, Dr. van Moorleghem testified that he had "looked everywhere" for documents on his computers and produced everything that he had.  *See* van Moorleghem Rule 30(b)(6) Depo. at 384:15 – 385:4 (Ex. F to Pisano Decl.).  He also testified that he had searched his crashed hard drives to locate documents for production:

1    Q.  Did you ever go through your files and pull documents relating to this

2    matter?

         A.  Oh, you mean collecting from my files –

3        Q.  Yes.

4        A.   – not going and collecting – yes.  And what I did was *I went through

5    *my computer or I should say computers*.  I had some problems there because – and

     you see that in the documents I did later send, I had some problems on my old

6    computers.  *I think two hard disks have crashed.  If a hard disk crashes and you

     want to access it, it's not formatted and you can read nothing anymore.*

7
         *So in order to recuperate as much out of these crashed hard disks, what I*

8    *did do is – when a hard disk is crashed, normally it's the directory that doesn't*

     *function anymore.  So the directory of a hard disk says, you know, which*

9    *locations of the hard disk a file is positioned.  Very often the file is not written in*

     *one piece but like in physically three, four, five different pieces, and the directory*

10   *keeps the locations of these different positions.  So if you ask this file, it know*

     *where to go and look.  So if your hard disk crashes, then this directory is gone,*

11   *and it is very difficult to recuperate the data on it, but the data is still on there.*

12       *So what I did was go in to read the really – a the bits, the pieces of the*

     *hard disk and try to reproduce what was on it.  And that's why some of the*

13   *documents that I did produce, they sometimes look a little bit not so elegant.*

14       But, yes, I went through my files, and I did send what I had in my files.

15       Q.  When you say files, you're speaking solely of computer files?

16       A.  No.  I went through – through copies, through – I  went through what I

     had.  But most of it – most of it, of course, is in computers.

17
         Q.   Did you travel to AMT to collect these documents?

18
         A.  No.  These documents, I have most of it on my laptop.  And it is all

19   these crashed hard disks that I had elected – I tried to recollect when I was staying

     in Belgium but not in AMT.  I did it at my parents' place.

20
         Q.  On your laptop?

21
         A.  No.  *I mean I used the hard disks, the crashed hard disks, and I tried*

22   *to, with my laptop, to recollect data from the crashed hard disks.*

23   Van Moorleghem Depo. at 66:2 – 67:24 (Ex. A to Moyer Decl.) (emphasis added).

24

25

26

27

28

**LEGAL ARGUMENT**

I.   **LUCE FORWARD AND MR. PISANO SHOULD NOT BE COMPELLED TO PRODUCE MR. PISANO'S EVALUATION OF THE BIFLEX PATENT PORTFOLIO REVIEW FOR JOMED.**

    A.     **The Patent Portfolio Review is Protected by the Attorney-Client Privilege**.

STC does not dispute that the Patent Portfolio Review – a document prepared by Mr. Pisano for his client, Jomed – was subject to the attorney-client privilege when prepared. Instead, STC argues that: (1) the attorney-client privilege was waived because Jomed disclosed the document to Abbott in the course of its due diligence prior to purchasing the Biflex Technology; and (2) the attorney-client privilege may not be asserted because Jomed is "defunct."[6] Docket 398 at 7:22-28. Neither contention has merit.

First, in *Hewlett Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308, 308-12 (N.D. Cal. 1987), Magistrate Judge Brazil specifically rejected the contention that the defendant "waived its rights under the attorney-client privilege and/or the work product doctrine when it voluntarily disclosed its attorney's opinion letter [concerning the validity and possible infringement of the plaintiff's patent] to a non-party with whom it was attempting to negotiate the sale of a business." *Id.* The court found that strong policy reasons militate against a finding of waiver:

> Holding that this kind of disclosure constitutes a waiver could make it appreciably more difficult to negotiate sales of businesses and products that arguably involve interests protected by laws relating to intellectual property. ***Unless it serves some significant interest courts should not create procedural doctrine that restricts communication between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or product they are considering buying.*** Legal doctrine that impedes frank communication between buyers and sellers also sets the stage for more lawsuits, as buyers are more likely to be unpleasantly surprised by what they receive. ***By refusing to find waiver in these settings courts create an environment in which businesses can share more freely information that is relevant to their***

---

[6] STC also argues that Luce Forward and Mr. Pisano waived their objections on the grounds of the attorney-client privilege and the work product doctrine because such objections were dated January 19, 2007 and the subpoenas demanded production on January 16, 2007. *See* Docket 398 at 6:27 – 7:1. The purported service was ineffective because the subpoenas to Luce Forward and Mr. Pisano were personally served on Mr. Pisano's secretary, at a time when Mr. Pisano was out of the country. *See* Pisano Decl., ¶ 16. Mr. Pisano was not authorized to accept service on behalf of Luce Forward, and Mr. Pisano's secretary was not authorized to accept service of a subpoena for him. *See id.* Although informed that its service was defective, STC has never attempted to properly serve the subpoena directed to Mr. Pisano personally. *See id.* The objections were served within 14 days of the purported service.

10

1      ***transactions.  This policy lubricates business deals and encourages more openness in transactions of this nature.***

2

3  *Id.* at 311 (emphasis added).  *See, e.g.*, *Tenneco Packaging Specialty & Consumer Prods., Inc. v.*

4  *S.C. Johnson & Son, Inc.*, 1999 U.S. Dist. LEXIS 15433 at *6-8 (N.D. Ill. Sept. 14, 1999) (holding

5  that the attorney-client privilege was not waived when a patent lawyer's opinion was shown to a

6  potential purchaser in due diligence for the asset purchase agreement which gave the purchaser

7  rights in the patent at issue).

8      Thus, Jomed's disclosure of the Patent Portfolio Review to a company negotiating to

9  purchase Jomed's patents did not waive the attorney-client privilege.

10      Second, STC argues that "any privilege held by Jomed was extinguished when Jomed

11  became defunct."  Docket 398 at 7:24-28.  However, while Jomed is in bankruptcy and in the

12  process of winding down, the company is not yet defunct.  *See* Pisano Decl., Ex. B (Fourteenth

13  Public Report by Bankruptcy Trustee dated February 9, 2007).  The case cited by STC found only

14  that "counsel has no duty to assert the attorney-client privilege on behalf of a ***non-operating/***

15  ***defunct*** corporation and indeed, counsel lacks the ability to do so."  *Gilliland v. Geramita*, 2006

16  WL 2642525 at *4 (W.D. Pa. Sept. 14, 2006) (emphasis added).  That case does not suggest that

17  the attorney-client privilege is inapplicable to a corporation that is in the process of dissolution

18  through bankruptcy.  As a matter of policy, there is no basis for denying the benefits of the

19  attorney-client privilege to a corporation merely because it has filed for bankruptcy.

20      **B.**    **The Patent Portfolio Review is Protected by the Work Product Doctrine**.

21      "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects

22  'from discovery documents and tangible things prepared by a party or his representative in

23  anticipation of litigation.'"  *In re Grand Jury Subpoena*, 357 F.3d 900 (9th Cir. 2004) (quoting

24  *Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  "[A] document

25  should be deemed prepared 'in anticipation of litigation' and thus eligible for work product

26  protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in

27  the particular case, the document can be fairly said to have been prepared or obtained because of

28  the prospect of litigation.'"  *Id.* at 907 (quoting 8 C. Wright, A. Miller & R. Marcus*, Federal*

11

1    *Practice & Procedure*, § 2024 (2d ed. 1994)).  *See*, *e.g.*, *United States v. Adlman*, 134 F.3d 1194,

2    1198, 1202-03 (2d Cir. 1998) (under the "Wright & Miller 'because of' formulation," the work

3    product doctrine applies only "[w]here a document is created because of the prospect of

4    litigation").

5           Under the "because of" formulation, for a document to have been prepared or obtained

6    because of the prospect of litigation, "the lawyer must at least have had a subjective belief that

7    litigation was a real possibility, and that belief must have been objectively reasonable."  *In re:*

8    *Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).  *See*, *e.g.*, *United States v. Roxworthy*, 457 F.3d

9    590, 594 (6th Cir. 2006) (same).

10          Here, Mr. Pisano had a subjective belief that Jomed N.V. was considering litigation against

11   the Jomed N.V. Management Board for having squandered the company's assets with respect to

12   acquisitions of the technology discussed in the Patent Portfolio Review.  *See* Pisano Decl., ¶ 2.

13   The objective reasonableness of Mr. Pisano's belief is supported by the fact that, less than two

14   months after Mr. Pisano provided Jomed with his memorandum, Jomed filed suit against its

15   directors alleging mismanagement.  *See id.*, Ex. 4, at 4, § 2.2.

16          Even if STC were correct in its contention that the attorney-client privilege no longer

17   applies to Jomed because it is defunct – which it is not – that would not render the work product

18   doctrine inapplicable.  "It is well-established that the work-product privilege may be invoked by

19   either the client or the attorney."  *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).  "An

20   attorney has an independent interest in privacy, even when the client has waived its own claim, as

21   long as invoking the privilege would not harm the client's interests."  *Id.*  Because Luce Forward's

22   invocation of the work product doctrine could not harm Jomed's interests, the law firm has the

23   right to invoke that doctrine regardless of Jomed's status.

24          **C.      STC has Not Shown Good Cause for Obtaining the Patent Portfolio Review**.

25          Under Fed. R. Civ. P. 26(b)(3), a party may obtain production of work product "only upon

26   a showing that the party . . . has substantial need of the materials in the preparation of the party's

27   case, and that the party is unable without undue hardship to obtain the substantial equivalent of the

28

1    materials by other means." *Id.*  Here, STC cannot show that it has **any** need for the Patent

2    Portfolio Review, much less **substantial** need.

3         Mr. Pisano prepared the Patent Portfolio Review for Jomed N.V. – a party other than

4    Kentucky Oil – and the Patent Portfolio Review was never shown to Kentucky Oil.  *See* Pisano

5    Decl., ¶¶ 2-3, 6.  Kentucky Oil is not seeking to introduce Mr. Pisano's opinions concerning the

6    value of the Biflex Technology, *see id.,* ¶ 6, and his opinions – rendered on behalf of a third party

7    and never disclosed to Kentucky Oil – are of no evidentiary value whatsoever.  As is demonstrated

8    by the fact that STC has submitted an expert report purporting to place a value on the Biflex

9    Technology, the Patent Portfolio Review is not the sole basis for valuing that Technology.

10        STC cannot demonstrate substantial need based upon its apparent desire to obtain the

11   Patent Portfolio Review to strengthen its argument – which is wrong as a matter of law – that Mr.

12   Pisano should be disqualified from representing Kentucky Oil as an advocate at trial because he is

13   allegedly a proper trial witness.  STC's gamesmanship does not justify invasion of work product

14   protection.

15
16        **D.    Luce Forward and Mr. Pisano Should Not be Compelled to Produce
                Documents Reviewed in Connection with the Patent Portfolio Review.**

17        For the reasons set forth above, the Court should not compel Luce Forward and Mr. Pisano

18   to produce the Patent Portfolio Review, and therefore should deny STC's motion to compel the

19   production of the documents reviewed by Mr. Pisano in preparing the Patent Portfolio Review.

20   Furthermore, because there is no evidence that Abbott was provided access to any attorney-client

21   privileged documents reviewed by Mr. Pisano in preparing the Patent Portfolio Review, there is no

22   basis for finding a waiver of privilege as to any such documents.  Finally, the discovery sought by

23   STC is overbroad, burdensome, and oppressive to the extent that it seeks the production of

24   documents not related to the valuation of the Biflex Technology.

25        As a practical matter, Mr. Pisano does not now know – and has no way of identifying –

26   most of the documents that he might have reviewed to prepare the Patent Portfolio Review.  *See*

27   Pisano Decl., ¶ 7.  Accordingly, any order requiring Luce Forward and Mr. Pisano to produce

28   documents must be limited to those nonprivileged documents that Mr. Pisano currently believes

1    that he reviewed in connection with the preparation of the portion of the Patent Portfolio Review

2    that deals with the Biflex Technology.

3
     II.    **KENTUCKY OIL HAS ALREADY PRODUCED ITS ORIGINAL HARD COPIES**
4           **FOR INSPECTION TO THE EXTENT REQUESTED BY STC**.

5           While STC attempts to give the Court the impression that Kentucky Oil failed to make

6    many of its original hard copies available for inspection at deposition, its motion does not identify

7    any original documents that Kentucky Oil actually failed to produce at deposition.  STC's motion

8    refers to only three exhibits (two documents) the originals of which STC claims that Kentucky Oil

9    should have produced – Exhibits 356, 357, and 358 (Moyer Decl., Exs. R, S, and T).  *See* Docket

10   398 at 5:1-16.  STC complains that the documents originally produced by Kentucky Oil cut off

11   information on the margins, and claims that "the original documents with full information at the

12   margins will belie KOT's allegation that Besselink only discovered STC's patent publications in

13   2003."  *Id.*

14          STC's contention with regard to these documents is frivolous because ***Kentucky Oil made***

15   ***the originals of these exhibits available at Mr. Besselink's resumed deposition on January 11,***

16   ***2007,*** and STC's counsel questioned Mr. Besselink about them at his deposition.  *See* Besselink

17   Depo. at 139:4 - 142:16 (Ex. D to Pisano Decl.).

18          STC also complains that Kentucky Oil "failed to produce the original, electronic version of

19   documents including a color highlighted version of Besselink's patent application."  Docket 398 at

20   5:17-28.  Because Kentucky Oil has now produced a color version of that document that shows the

21   red text, *see* Pisano Decl., ¶ 14, Ex. G, STC's motion to compel is moot with regard to this

22   document.[7]

23          STC's moving papers do not include any discussion of 13 documents produced by

24   Kentucky Oil that were attached as exhibits to the Declaration of David Moyer.  *See* Moyer Decl.,

25   Exs. I (Ex. 359), K (Ex. 718), L (Ex. 719), P (Ex. 693), Q (Ex. 704), U (Ex. 365), V (Ex. 366), W

26   (Ex. 373), X (Ex. 571), QQ (Ex. 698), RR (Ex. 700), SS (Ex. 701), TT (Ex. 704).  At his January

27   _____

[7]     As discussed above, at Mr. Besselink's January 11, 2007 deposition Kentucky Oil provided
28   STC with the original hard copy of this document, but it was determined that the original hard
     copy did not show the text that was highlighted in red.  *See* Pisano Decl., ¶ 14.

                                                    Case No. CV 04-03843 RMW (HRL)
                                                    KENTUCKY OIL'S OPP. TO STC.'S MOTION TO COMPEL

11, 2007 deposition, Mr. Besselink provided testimony concerning the original of two of these exhibits – Exs. U (Ex. 365) and W (Ex. 373) – and testified that he had been unable to find the original of Ex. X (Ex. 571) (the produced copy of which is, in any event, legible).  *See* Besselink Depo. at 94:11-25, 111:18-25, 122:16 – 123:1.  One of the remaining exhibits – Ex. P (Ex. 693) – cuts off a letter or two of text on the left side, but the document is still legible.  Three other exhibits – Exs. I (Ex. 359), K (Ex. 718), and V (Ex. 366) bear handwriting, but the handwriting is legible in the copied document.  None of the remaining exhibits to the Moyer Declaration is either cut-off or even arguably illegible.  Thus, the documents not discussed in STC's brief provide no basis for compelling Kentucky Oil to produce hard copies of documents.

In short, STC has shown no grounds for compelling Kentucky Oil to produce all of its original documents.  This Court's unpublished (and not for citation) decision in *In re Novellus Sys. Inc. Derivative Litig.*, 2007 WL 46076 (N.D. Cal. Jan. 5, 2007), cited by STC, found "no reason why plaintiffs should not be allowed to inspect the originals of an apparent ***handful of documents*** which they claim are illegible or show facial irregularities as to signature dates and the like.  *Id.* at \*1 (emphasis added).  That case provides no support for STC's attempt to burden and harass Kentucky Oil by requiring it to produce ***all*** original documents, without any showing why the copies are insufficient.  Because STC's motion does not identify any original documents, not yet produced, that are illegible or have facial irregularities, STC's motion to compel the production of originals must be denied in its entirety.

III.   **STC HAS NOT SHOWN GOOD CAUSE TO REQUIRE KENTUCKY OIL TO PRODUCE ITS HARD DRIVES FOR INSPECTION.**

   A.   **The Undisputed Evidence Shows that Kentucky Oil Searched Electronic Media to Locate Documents for Production.**

Both Mr. Besselink and Dr. van Moorleghem testified that they searched the hard drives of all of their computers for potentially responsive documents.  *See* Besselink Depo. at 30:19 – 32:24 (Ex. D to Pisano Decl.); van Moorleghem Rule 30(b)(6) Depo. at 384:15 – 385:4 (Ex. F to Pisano Decl.).  Dr. van Moorleghem testified in detail as to how he searched his crashed hard drives for responsive documents.  *See* Van Moorleghem Depo. at 66:2 – 67:24 (Ex. A to Moyer Decl.).

1      Despite the unrefuted evidence that Kentucky Oil did everything necessary to search for

2  electronic documents, STC asks the Court to require Kentucky Oil to make its hard drives

3  available for inspection.  In support of its contention that document production was incomplete

4  and that Kentucky Oil therefore should be compelled to produce hard drives, STC identifies only

5  two documents that Kentucky Oil failed to produce – an October 16, 2000 e-mail (Moyer Decl.,

6  Ex. N) and a March 6, 2003 e-mail (Moyer Decl., Ex. O).  However, there is no evidence that

7  Kentucky Oil still had electronic copies of such documents at the time of the discovery at issue.

8      STC cites two cases for the proposition that a party may be compelled to make its hard

9  drives available for inspection where discrepancies in the party's production suggest that the party

10  failed to produce responsive documents.  *See* Docket 398 at 8:16-24.  The cited cases

11  acknowledge that "troubling discrepancies" in a party's production may justify the production of a

12  mirror image of a hard drive for inspection by an expert.  *See Ameriwood Indus., Inc. v. Liberman*,

13  2006 WL 3825291 at *3-5 (E.D. Mo. 2006) (finding such a discrepancy where the defendants

14  failed to produce an e-mail from a defendant's personal e-mail account to a customer of the

15  plaintiff); *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000)

16  (allowing discovery of hard drives and servers where were "troubling discrepancies" with respect

17  to defendant's production of deleted computer files).

18      It is not surprising that Kentucky Oil failed to locate electronic copies or hard copies of

19  two e-mails sent six years ago and three and a half years ago, respectively.  Indeed, STC has failed

20  to produce many e-mails and attachments that are referred to or appear as part of other documents

21  produced by STC or Memry.  Kentucky Oil has not brought a motion to compel STC to make its

22  hard drives available for inspection, recognizing that e-mails are sometimes deleted in the ordinary

23  course of business.  The fact that a third party retained and produced two e-mails that Kentucky

24  Oil did not produce is not a sufficient basis to require Kentucky Oil to make its hard drives

25  available for inspection.  If a hard drive is discoverable in these circumstances, it is difficult to

26  imagine a case where a hard drive would not be discoverable as a matter of course.

27      STC's contention that Kentucky Oil deliberately failed to produce these documents, *see*

28  Docket 398 at 4:16-18, 4:25-28, is frivolous and offensive.  These documents were produced by

1   third-party LDT, in a document production made on its behalf by Luce Forward – the same law

2   firm that is representing Kentucky Oil in this matter.  *See* Pisano Decl., ¶ 15.  If Kentucky Oil had

3   deliberately withheld production of these documents, why would its counsel have produced such

4   documents from LDT?

5          Because the undisputed deposition testimony demonstrates that Dr. van Moorleghem

6   searched for and produced all documents from his crashed hard drives, it is irrelevant whether

7   AMT discarded those hard drives.  To set the record straight, however, Kentucky Oil notes that

8   STC is flatly wrong in contending that Dr. van Moorleghem testified that AMT still had the

9   crashed hard drives as of the time of his deposition in October 2006.  At his deposition on October

10  25, 2006, Dr. van Moorleghem testified to his belief that he had kept the crashed hard drives at his

11  parents' home or at AMT, but he also testified about "a big cleanup in AMT of old computer stuff

12  like a year – a year ago."  Van Moorleghem Depo. at 520:8-22, 685:13 – 689:1 (Ex. E to Pisano

13  Decl.).  At his deposition as Kentucky Oil's Rule 30(b)(6) designee on January 16, 2007, Dr. van

14  Moorleghem testified that he had checked with AMT and learned that, when AMT had installed a

15  clean room in early 2006, AMT had discarded the crashed hard drives, as well as a lot of other

16  obsolete computer equipment.  *See* van Moorleghem Rule 30(b)(6) Depo. at 11:24 – 13:1 (Ex. F to

17  Pisano Decl.).

18

19          **B.**     **Dutch and Belgian Law Bar the Export of the Hard Drives to the United**
                       **States**.

20         To the extent that STC is demanding that the hard drives at issue be sent outside the

21  European Union, the relief sought by STC would violate Dutch and Belgian law.  The hard drives

22  at issue contain "personal data" as that term is used in the Personal Data Protection Act enacted by

23  the Upper House of the Dutch Parliament on July 3, 2000 (the "Dutch Act") and the Belgian law

24  of December 8, 1992 in relation to the Processing of Personal Data as modified by the law of

25  December 11, 1998 implementing Directive 95/46/EC (the "Belgian Act").  *See* Dutch Act, Art. 1,

26  § a; Belgian Act, Art. 1, § 1.  Both the Dutch Act and the Belgian Act impose restrictions on the

27  transfer of personal data outside the European Union.  *See* Dutch Act, Arts. 76-77; Belgian Act,

28  Arts. 21-22.

Case No. CV 04-03843 RMW (HRL)
KENTUCKY OIL'S OPP. TO STC.'S MOTION TO COMPEL

1

     **C.**     **STC Failed to Meet and Confer with Regard to the Potential Applicability of the Amendments to the Federal Rules of Civil Procedure Concerning Electronic Discovery or the Use of an Independent Consultant.**

2

3          For the first time in its moving papers, STC makes two proposals that it failed to raise

4  during the meet-and-confer process.  First, STC suggests that this case should be subject to the

5  2006 Amendments to the Federal Rules of Civil Procedure, which became effective on December

6  1, 2006.  *See* Docket 398 at 8:8-15.  Second, STC suggests that the hard drives at issue should not

7  be produced to STC, but should instead be "available for inspection by a qualified forensic

8  consultant pursuant [to] a protocol to be established by the parties or by the Court in the event that

9  the parties are unable to agree upon such protocol."  *Id.* at 8:25 – 9:2.  Had STC made these

10  proposals before filing its motion, Kentucky Oil, STC, and Memry could have sought to negotiate

11  a reciprocal protocol for electronic production of documents by ***all*** parties pursuant to which ***all*** of

12  the parties would make their electronic media available for inspection by an independent

13  consultant.  *See* Fed. R. Civ. P. 26(f)(3) (stating that the parties, at their Rule 26(f) conference, are

14  to discuss "any issues relating to disclosure or discovery of electronically stored information,

15  including the form or forms in which it should be produced").

16          Kentucky Oil also notes that STC, by producing several hundred thousands of pages of

17  electronic documents in non-searchable .pdf format, has "run afoul of the Advisory Committee's

18  proviso that data ordinarily kept in electronically searchable form 'should not be produced in a

19  form that removes or significantly degrades this feature.'"  *In re Payment Card Interchange Fee &*

20  *Merchant Discount Antitrust Litig.*, 2007 WL 121426 at *3 (E.D.N.Y. Jan. 12, 2007).  To the

21  extent that the Court finds that this case is properly subject to the electronic discovery rules

22  notwithstanding the fact that written discovery was largely completed by the effective date of the

23  2006 Amendments, Kentucky Oil expects STC to comply with its obligation to reproduce in

24  searchable format all documents ordinarily kept in electronically searchable form.

25

26

27

28

Case No. CV 04-03843 RMW (HRL)
KENTUCKY OIL'S OPP. TO STC.'S MOTION TO COMPEL

1

## CONCLUSION

2      For the reasons stated herein, Kentucky Oil respectfully asks the Court to deny STC's

3  motion to compel in its entirety.

4  DATED:   February 20, 2007                    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

5

6                                          By:    /s/  Jeffrey D. Wexler

7                                                Jeffrey D. Wexler
                                                Attorneys for Kentucky Oil Technology,
8                                               N.V., Peter Besselink and Memory Metal
                                                Holland B.V.

9

10  209732.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28