**E-FILED on**   11/5/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEMRY CORPORATION,<br><br>      Plaintiff,<br><br>      v.<br><br>KENTUCKY OIL TECHNOLOGY, N.V., PETER BESSELINK, MEMORY METALS HOLLAND, B.V.,<br><br>      Defendants. | No. C-04-03843 RMW<br><br>ORDER GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KOT'S CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT; GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT KOT IS NOT ENTITLED TO MONETARY RELIEF UNDER ANY OF ITS CLAIMS AGAINST STC<br><br>**[Re Docket No. 344, 362]** |
| KENTUCKY OIL TECHNOLOGY, N.V.,<br><br>      Counterclaimant,<br><br>      v.<br><br>MEMRY CORPORATION and SCHLUMBERGER TECHNOLOGY CORPORATION,<br><br>      Counterdefendants. | |

On May 25, 2007, the court heard seven motions for partial summary judgment: two motions filed by counterdefendant Memry Corporation ("Memry"); five motions filed by counterdefendant

Schlumberger Technology Corporation ("STC"). Memry joined in STC's five motions. Because they are factually related, this order addresses (1) STC's Motion for Partial Summary Judgment on KOT's Claims for Unfair Competition and Unjust Enrichment and (2) STC's Motion for Partial Summary Judgment That KOT is Not Entitled to Monetary Relief Under any of Its Claims Against STC.

## I. BACKGROUND

Defendant and counterclaimant Kentucky Oil Technology, N.V. ("KOT") claims that Peter Besselink ("Besselink") is the inventor of "bistable" and "multistable" cells for use in expandable structures. Declaration of Peter Besselink ("Besselink Decl.") ¶ 4. Together with proprietary cell designs, know how and related analytical developments, this technology is known as "the Biflex technology."

Besselink filed U.S. provisional application Serial No. 60/036,359 on January 24, 1997, describing and claiming the bistable and multistable cells for use in expandable structures for medical and non-medical applications. *Id.* Besselink filed U.S. patent application Serial No, 09/012,843 ("the '843 application") and PCT International Application PCT/US98/01310 ("the '01310 application") on January 23, 1998, claiming the benefit of priority of the U.S. provisional patent application. *Id.* These applications are known as "the Besselink applications."

The Biflex technology and Besselink applications have been transferred through numerous companies to KOT. KOT's predecessors-in-interest Memory Metals Holland ("MMH") and United Stenting ("U.S. Inc.") entered into a Collaboration Agreement with Memry to scale up previously-developed prototypes of stents, sharing with Memry information that KOT now asserts as trade secret. Memry subsequently entered into a Development Agreement with STC to develop expandable sand screens for oil wells that were based upon Besselink's Biflex technology ("STC sand screen project"). Declaration of Jeffrey Griffin ("Griffin Decl."), Ex. B, Development Agreement. KOT asserts that Memry shared with STC confidential and trade secret information relating to the Biflex technology as part of the STC sand screen project.

**A.     STC Sand Screen Project**

Starting in November 1999, Craig Johnson of STC began to research possible alternative approaches to expandable wellbore tubes that would fall outside the scope of a patented expandable sand screen for oil wells. Declaration of Patrick Bixenman ("Bixenman Decl."), Ex. A; Declaration of Craig Johnson ("Johnson Decl."), Ex. A. Johnson initially considered a medical stent-like device made of a shape memory alloy ("SMA"), which led him to contact Memry, a company that was known to have expertise in the field of SMAs. Memry suggested to STC that an article published by Besselink, Wilfried van Moorleghem and Ton van Roermund disclosed medical stent designs that might be adapted for use in a wellbore sand screen.

When asked to provide samples of the medical stent prototypes, Besselink responded by proposing that he and van Moorleghem team up with Memry to work on the project. He asked Memry to propose terms for their participation in the project. Memry's then-Chief Scientist, Dr. L. MacDonald Schetky, wrote to Besselink offering him a consultancy on the project to be paid from a portion of what Memry would realize "in the event that the program progresses to commercialization." Decl. David Moyer Decl. ("Moyer Decl."), Ex. P. Besselink did not pursue this opportunity.

STC entered into a Development Agreement with Memry, the stated purpose of which was to "determine the feasibility of using bi-stable cell techniques and technology for creating expandable conduits and other devices in wells." Griffin Decl., Ex. B. STC agreed to pay Memry on a consulting basis and a 6.5% royalty for product sales after commercialization. *Id.*

The Development Agreement contemplated that the parties would develop technology which would have applicability in both the oil well and medical fields. Griffin Decl., Ex. B. It also contemplated that STC and Memry would file patent applications related to the development project. In 2000 and 2001, STC filed a number of patent applications for inventions related to applying the Biflex technology in oil well applications. These patent applications have matured into numerous patents that are assigned to STC. STC has never sued or threatened to sue any person or entity for infringement of these patents. Griffin Decl. ¶ 10.

ORDER GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KOT'S CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT; GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT KOT IS NOT ENTITLED TO MONETARY RELIEF UNDER ANY OF ITS CLAIMS AGAINST STC—C-04-03843 RMW
MAG                                                                3

1    STC's development efforts continued through the end of 2003. In October 2003, STC conducted a field test but the STC sand screen prototype was unable to achieve performance specifications for collapse resistance set by STC's customer, BP. Hackworth Decl. ¶ 26. By the time of the third field trial, STC had determined that the manufacturing cost of STC's sand screen prototype exceeded the estimated costs of its three competitors, that the market demand for expandable sand screen was lackluster and that the needs of STC's customers for an expandable sand screen did not outweigh the additional research and development needed to continue the project. *See* Moyer Decl. Ex. GG; Moyer Decl., Ex. CC, Dep. of Matthew Hackworth (Vol. II) at 171, 296. STC had also concluded that there was "an unacceptable risk" that it would be accused of infringing patents held by Shell unless it implemented a costly design-around. Griffin Decl. ¶ 23-24. In early 2004, STC began to consider reselling an alternative expandable sand screen provided by Weatherford in light of the technical difficulties with the STC sand screen project. Moyer Decl., Ex. CC, Dep. of Matthew Hackworth at 143:9-24; Hackworth Decl. ¶ 29. STC began negotiating to become a licensed reseller of Weatherford's expandable screens outside the United States in February 2004. Hackworth Decl. ¶ 29, Ex. C. STC has yet to sell any of Weatherford's expandable screens. Hackworth Decl. ¶ 29.

In October 2003, STC presented a paper at a meeting of the Society of Petroleum Engineers in which it described its expandable bistable cell sand screen to oil industry representatives. The topic of the paper was "the design, development and testing of an expandable sand screen using bistable cell technology." Decl. of Jeffrey Wexler Supp. Opp'n to Mot. Summ. J. Re: Unfair Competition and Unjust Enrichment Claims ("Wexler Decl. (unfair, unjust)"), Ex. E at 1.

**B.    Transfer of the Biflex Technology**

In 2000, United Stenting sold Besslink's bistable cell technology to Jomed N. V. for an up-front payment of $10 million and running royalties of 5.5%. Wexler Decl., Ex. I, §§ 2.1, 2.2. Jomed entered bankruptcy and its assets were transferred to Abbott. After KOT was formed, it acquired the rights Jomed had acquired from United Stenting. It later transferred rights to medical applications of the Biflex technology to Paragon for approximately $3 million.

**C.     KOT's Licensing Efforts**

KOT purports to license Biflex technology for oil well exploration and production. It claims to have had contact with four companies: Shell, Noble Drilling ("Noble"), Baker Oil Tools ("Baker"), and Weatherford. KOT alleges that its efforts to license its technology have been blocked by the STC patents and patent applications.

In January 2004 met with Paul Schilte of Shell. Besselink did not make a proposal to Shell following that meeting. Moyer Decl., Ex. D, Besselink Dep. (Vol. II) at 354:23-355:19. Besselink also had a few conversations with Paul Metcalfe of Weatherford in Aberdeen and Rijswik. Moyer Decl., Ex. C, Besselink Dep. (Vol. II) at 60:17-61:18. Besselink was not invited to present the technology to Weatherford, but was told by Metcalfe that Weatherford was interested in the technology so long as he could "solve some problems." Although Besselink was unable to elaborate as to what those problems were, he indicated that Weatherford was aware of the STC patents and was concerned that Besselink did not have a patent for the Biflex technology in the oil well industry. Moyer Decl., Ex. C, Besselink Dep. (Vol. II) at 62:2-65:25.

In 2004, Besselink met with Buddy King of Noble at an Expandable Technologies Forum after which he sent an email to King suggesting setting up a meeting upon Besselink's visit to Houston in 2004. Moyer Decl., Ex. C, Besselink Dep. (Vol. II) at 66:13-67:12; *id.* Ex. II. The suggested meeting was not scheduled because of a conflict, but Besselink did not follow up to reschedule because he was sued by Memry around the time of his Houston trip and was too overwhelmed to reschedule. Moyer Decl., Ex. C, Besselink Dep. (Vol. II) at 67:13-25.

KOT pitched the Biflex technology to Baker in April 2005 after Bennet Richard from Baker contacted Besselink expressing an interest in Besselink's technology. Moyer Decl, Ex. W. Besselink provided Baker with STC's 2003 paper from the Society of Petroleum Engineers Meeting ("the SPE paper") to provide direction on cutting prototypes for testing. Moyer Decl., Ex. D at Besselink Dep. (Vol. II) at 371:3-11; *id.*, Ex. W. After receiving an email from Richard stating that the results of the test were poor, Besselink had no further contact with Baker. Moyer Decl., Ex. D., Besselink Dep. (Vol. II) at 370:8-14.

1  In June 2005, KOT assigned the rights in certain of KOT's technology for use in medical devices
2  to Paragon Intellectual Properties for 2.5 million Euros (approximately $3 million). Moyer Decl., Ex.
3  B, Besselink Dep. (Vol. II) at 418:10-21; Wexler Decl. (unfair, unjust), Ex. R at 1.

## II.  ANALYSIS

STC moves for partial summary judgment that KOT's counterclaim for unfair competition fails because STC has not engaged in any marketplace misconduct, KOT is not a business competitor of STC and KOT has not suffered any competitive injury. By the same motion, STC also asserts that KOT's counterclaim for unjust enrichment fails because STC has not been enriched. STC argues in a second motion that KOT is not entitled to monetary relief for KOT's claims for trade secret misappropriation, correction of inventorship, unfair competition and unjust enrichment, because KOT has not suffered any actual damages as a result of STC's alleged conduct.

As KOT acknowledges, the court dismissed KOT's claim for correction of inventorship to the extent it seeks compensatory damages in its April 8, 2005 Order, prior to the instant motion. The court has since also granted summary judgment that KOT's claims for trade secret misappropriation against STC and Memry are time-barred. Order Re: Memry and STC's Motions Re: KOT's Counterclaims for Trade Secret Misappropriation and Breach of the Collaboration Agreement Based on Misuse of Confidential Information. STC did not move for summary judgment that KOT is not entitled to monetary damages as to claims for breach of contract. Therefore, STC's motion that KOT is not entitled to monetary relief is limited to the question of whether KOT suffered any damages for purposes of its unfair competition and unjust enrichment claims. As KOT points out in its opposition to both of STC's motions, the motions for summary judgment are thus inextricably intertwined and will be considered together.

The court previously denied STC's motion to dismiss KOT's unfair competition and unjust enrichment claims as preempted by federal law stating:

> Like the doctors' claims in *American Cyanamid V*, KOT's unjust enrichment and unfair competition causes of action allege that STC acted improperly in the marketplace. Thus, KOT's claims go beyond mere allegations that (1) STC acted improperly in front of the PTO or (2) KOT is entitled to a patent-like right in the Besselink Applications. The SAC alleges that STC (1) "clouded title to the inventions described in the

|   |   |
|---|---|
| 1 | Besselink Applications and impeded [KOT's] ability to license those applications to interested third parties in the field of oil exploration" and (2) "received a benefit which [it] has unjustly retained at the expense of [KOT]." SAC ¶¶ 74, 80. At oral argument KOT's counsel clarified that KOT claims that (1) STC obtained patents based on information in the Besselink Applications, (2) publicized its technology in the marketplace but did not exploit it, and (3) thus controlled the market by dissuading companies from licensing KOT's technology for fear of being sued for infringement. Although STC's counsel correctly noted that the SAC does not explicitly refer to this course of conduct, the court believes that its references to "cloud[ing] title," impeding KOT's "ability to license," and "unjustly retain[ing]" a benefit state claims for unfair competition and unjust enrichment, especially when "construed in the light most favorable to the non-moving party." *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). |

July 14, 2005 Order Granting in Part and Denying in Part STC's Motion to Dismiss ("July 14, 2005 Order") at 5-6, Docket No. 83.

STC now moves for summary judgment on KOT's unfair competition and unjust enrichment claims on the basis that it has not engaged in any marketplace misconduct with respect to KOT because it has not offered any goods for sale, has not asserted any of the patents it filed based on the Biflex technology, and has not made any statements to KOT's prospective customers regarding any of STC's patents. In opposition to STC's motion, referring to the July 14, 2005 Order, KOT argued, "Because Kentucky Oil's claim is *predicated upon the misuse of confidential information and trade secrets*, this case falls on the *American Cyanamid VI* side of the line." KOT's Opp'n to STC's Mot for Partial Summ. J. re: Unfair Competition and Unjust Enrichment (emphasis added).

As the court also stated in the July 14, 2005 Order, "Based on *Digital Envoy*, and on the reasoning set forth in the court's April 8, 2005 order, the court believes that the [California Uniform Trade Secrets Act (CUTSA)] preempts KOT's unfair competition and unjust enrichment claims to the extent that they allege that STC misused confidential information." July 14, 2005 Order at 3. KOT's argument on opposition appears to assert that KOT bases its unfair competition and unjust enrichment claims on the misuse of confidential information and trade secrets, thereby resulting in preemption for the reasons set forth in this court's April 8, 2005 and July 14, 2005 orders.

KOT's counsel clarified at the hearing on the matter that his argument in written opposition mistakenly argued too far. KOT's counsel explained that he overreached his argument demonstrating

ORDER GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KOT'S CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT; GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT KOT IS NOT ENTITLED TO MONETARY RELIEF UNDER ANY OF ITS CLAIMS AGAINST STC—C-04-03843 RMW
MAG                                                                                               7

that KOT's unfair competition and unjust enrichment claims were not preempted by patent law, inadvertently treading into the realm of trade secret law preemption previously determined by this court's orders set forth above. He clarified that the basis of KOT's unfair competition and unjust enrichment is not the misuse of confidential information or trade secrets, rather, as alleged, that STC obtained patents using information that was published in the Besselink applications. SAC ¶¶ 70-75, 79-80.

KOT seeks damages, disgorgement of STC's unjust enrichment, and a reasonable royalty on its unfair competition and unjust enrichment claims. All of KOT's purported damages are based upon a "cloud on title" theory. It asserts that STC obtained patents based on information in the published Besselink applications and publicized its technology in the marketplace without exploiting it, which (1) deprived KOT of the opportunity to license its technology to other oilfield service companies by dissuading these companies from licensing KOT's technology for fear of being sued for infringement and (2) reduced the amount of money that KOT received when it sold the technology to Paragon for use in medical applications. July 14, 2005 Order at 5-6, Opp'n to STC's Mot. Summ. J. re: No Monetary Relief. The court previously stated that, "Like the doctors' claims in [*Univ. of Colo Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298 (Fed. Cir. 2003)], KOT's unjust enrichment and unfair competition causes of action allege that STC acted improperly in the marketplace." July 14, 2005 Order at 5.

There is a difference between liberally construing allegations in a complaint for purposes of stating a claim and adjudicating based on evidence presented on a motion for summary judgment. Now viewing the lengths to which KOT has attempted to stretch its minimal case, the court feels that in hindsight, even allowing KOT's pleadings to stand may have been overly generous. Between the preemption of KOT's unfair competition and unjust enrichment claims under CUTSA and the preemption of such claims under patent law, there is very little space in which KOT may operate to state a claim for unfair competition and unjust enrichment based upon the factual allegations it has set forth.

Even assuming that there is theoretically some claim stated, there is no evidence to support any loss by KOT or gain by STC. As to the loss by KOT, there is no evidence that the four potential customers mentioned by KOT failed to do business with KOT because of anything done by STC. As

1  to gain by STC, there is no evidence that STC has ever produced a commercial product based on the
2  disputed technology, nor is there evidence that STC has communicated with companies KOT identifies
3  as its potential customers regarding the disputed technology or asserted or threatened to assert the
4  patents that serve as the basis for KOT's claims.

5  There is no dispute that STC has neither offered goods for sale embodying the disputed Biflex
6  technology nor asserted any of the patents it filed that are allegedly based on said technology. KOT has
7  not identified any direct statements made by STC to any of KOT's potential licensees. The only conduct
8  identified by KOT is the October 2003 publication of the SPE paper authored by participants in STC's
9  expandable sand screen research and development program. KOT asserts that the SPE paper "described
10 in considerable detail the development of the bistable cell geometry itself, strongly suggesting that the
11 technology described belongs to STC." Opp'n to STC's Mot. Summ. J. Re: No Monetary Relief at 5.

12 **A.    Unfair Competition**

13 A claim for common law unfair competition in California has four elements: (1) a substantial
14 investment of "time, skill or money in developing its property;" (2) appropriation and use of the
15 property by another company at little or no cost; (3) the appropriation and use of the "property was
16 without the authorization or consent ...;" and (4) injury by the appropriation and use by the other
17 company. *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 842 (2004) (citing
18 *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990)). Under the common
19 law, "competitive injury originally composed an essential element of the tort of 'unfair competition.'"
20 *Barquis v. Merchants Collection Ass'n of Oakland, Inc*., 7 Cal. 3d 94, 109 (1972); *cf. Bank of the West
21 v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).

22 STC first contends without citation to law that KOT is not a business competitor because it has
23 never produced a product, and has no employees or operational facilities. This argument has little merit,
24 particularly given that KOT has adduced evidence that it at least contacted four prospective customers
25 in the oil industry.

26 STC next asserts that KOT has suffered no competitive injury caused by STC. STC argues that
27 the SPE paper could not have resulted in a competitive injury to KOT as a matter of law because the
28

ORDER GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KOT'S CLAIMS FOR UNFAIR COMPETITION
AND UNJUST ENRICHMENT; GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT KOT IS NOT
ENTITLED TO MONETARY RELIEF UNDER ANY OF ITS CLAIMS AGAINST STC—C-04-03843 RMW
MAG                                                         9

SPE paper was published in October 2003 while KOT was not formed until December 2003 and did not purchase the Besselink Applications from Abbott Laboratories until two months after the SPE paper was published. According to STC, Besselink and van Moorleghem must have purchased the Besselink Applications with full knowledge of the prior publication of the SPE paper and thus could have avoided any competitive injury by not purchasing the Besselink applications. The court does not find this argument to be persuasive. Although it has found that Besselink and van Moorleghem should have known about the misappropriation of its trade secrets as of 1998 when Memry informed them that it was going to utilize its Biflex technology, it is certainly possible that KOT was not initially aware of the extent potential impact of the SPE paper on its future licensing efforts at the time it purchased the Besselink applications.

The court nevertheless finds that KOT has failed to adduce any evidence that it suffered competitive injury due to STC's ownership of the STC Patents or the publication of the SPE paper. KOT asserts that it was unable to successfully license its technology to four companies: Shell, Weatherford, Noble and Baker Oil Tools. The evidence on record does not support KOT's claim.

### 1. Baker

The undisputed evidence demonstrates that following Besselink's meeting with Bennet Richard at Baker, Baker attempted to manufacture prototypes utilizing the SPE paper. Baker found the results unsatisfactory:

> Peter, one of my engineers copied the design per the Schlumberger paper you sent. We then had several samples water jet cut. He did tensile and comprehensive loading on those samples but were [sic] not satisfied with the poor results so we have since dropped the project. I do not believe there is any interest in [Baker] at this time, but that is always subject to change. I'll keep your card handy in the event our situation changes.

1/26/07 Moyer Decl. (docket no. 347), Ex. W. Baker's lack of interest is unrelated to STC, rather Baker expressed its lack of interest after unsatisfactory results with samples based on the designs KOT provided. KOT presents no evidence that the failure to license to Baker was due to anything other than Baker's lack of satisfaction with the solution offered by KOT.

ORDER GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KOT'S CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT; GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT KOT IS NOT ENTITLED TO MONETARY RELIEF UNDER ANY OF ITS CLAIMS AGAINST STC—C-04-03843 RMW
MAG                                                      10

### 2. Noble

KOT failed to follow up with Noble. After meeting Buddy King of Noble at a conference in Rijswijk, Besselink sent King an email seeking to set up a meeting for when Besselink was in Houston in May 2004. Moyer Decl, Ex. C 66:22-67:12. King responded that he wanted to include his colleague, Dr. Bill Maurer, in any meeting with Besselink, but that Maurer would be out of the country at the time of Besselink's visit. *Id.* Besselink did not follow up with Noble after their e-mail exchange, purportedly because he was sued by Memry:

> Q: Did you send – after you were unable to meet with him during your 2004 trip, did you send him any further communications?
> A: I don't think so.
> Q: Did you ever try to call him?
> A: I don't think so.
> Q: Why not?
> A: I think – I think the situation changed drastically when I was there in Houston just because suddenly everything changed, suddenly I was sued by Memry, and I was overwhelmed about a lot of things. So I really had to think about what to do now, and I think was not wise to go further in what I was doing at that moment. It was too much at one moment.

Moyer Decl., Ex. C, 67:13-25. Besselink's testimony does not support the contention that Noble was dissuaded from licensing the biflex technology because of anything that STC might have done, rather it demonstrates that Besselink failed to follow up to reschedule a meeting with Noble, which resulted in losing the opportunity to pitch the technology to Noble.

### 3. Shell

Besselink first met with Shell in January 2004. Prior to the meeting, at Shell's offices in Rijswik, Paul Schilte of Shell sent an email to Besselink requesting discussion on the following topics: (1) an overview of patents, (2) a status update of Besselink's activities in the area, (3) what advice had been obtained by KOT's attorney, (4) KOT's provisional action plan, and (5) a proposal to Shell. Besselink testified that he did not make a proposal to Shell. He and van Moorleghem were waiting for an indication of Shell's interest before making a proposal. Moyer Decl., Ex. D. 354:23-355:19. Apparently, that indication never occurred and KOT adduces no evidence as to why Shell and KOT did not progress further in discussion. Therefore, there is also no evidence that STC's patents or the publication of the SPE paper had any impact on KOT's licensing efforts to Shell.

ORDER GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON KOT'S CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT; GRANTING STC'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT KOT IS NOT ENTITLED TO MONETARY RELIEF UNDER ANY OF ITS CLAIMS AGAINST STC—C-04-03843 RMW
MAG                                                            11

### 4. Weatherford

Besselink apparently had a few conversations with Paul Metcalfe of Weatherford. Besselink met Metcalfe at a presentation in Aberdeen. Moyer Decl., Ex. C, 60:17-18. Weatherford did not invite Besselink to present his technology, but Besselink exchanged correspondence with Metcalfe. Besselink asserts that Weatherford told him the company was interested in the technology so long as he could "solve some things." Besselink was unable to articulate what "those things" were and his testimony was wholly inconsistent as to whether STC was a topic of conversation with respect to Weatherford's interest in the Biflex technology. Moyer Decl., Ex. C at 62-65. The evidence presented in support of KOT's position consists solely of Besselink's convoluted testimony in which he initially asserts that Weatherford expressed concern about STC's ownership in the Biflex technology, but then backs off to say that he was unclear whether Weatherford mentioned STC at all. *Id.* at 63:14-21 ("I don't – I can't tell you if he mentioned, yes or no, the word 'Schlumberger,' but it was very clear what we were talking about, that's what I say. Like with Baker Oil. They were also interested. And they may not have said you have to solve this and that with Schlumberger, but they may have said when you solve your problems you are very welcome. So did they say it or did they not say it, I don't know. They may have."). Not only is tthis testimony inadmissible as hearsay as to the reason Weatherford decided not to work with Besselink, but the testimony on the whole is so clearly self-serving and vague that no jury could reasonably conclude from this testimony that Weatherford was dissuaded from licensing the technology from Besselink as a result of any ownership interest that was allegedly asserted by STC through the publication of the SPE paper or the issuance of the STC patents.

### 5. Sale to Abbott

KOT's contention that STC's behavior resulted in the decline in value of the Biflex technology in the medical field is far-fetched. KOT asserts that after it purchased the rights to Besselink's bistable technology from Abbott, it assigned to Paragon Intellectual Properties LLC rights in the technology for medical applications for 2.5 million Euros, or approximately $3 million. In support of its theory, KOT asserts that the expert testimony of Daniel Ingberman establishes that the price for the medical application rights should have been $10 million. Wexler Decl., Ex. T. But KOT presents no evidence

1  to suggest that any decline in value was in any way caused by STC.[1]  To prove it entitled to damages
2  for unfair competition and unjust enrichment, KOT is required to show a causal link between STC's
3  behavior and the damages suffered. *See, e.g.*, Cal. Civ. Code § 3333 ("For the breach of an obligation
4  not arising from contract, the measure of damages . . . is the amount which will compensate for all the
5  detriment proximately caused thereby, whether it could have been anticipated or not").  Because KOT
6  has failed to adduce any evidence that any act of STC caused the alleged decline in value for the rights
7  sold to Paragon, STC is entitled to summary judgment on KOT's unfair competition and unjust
8  enrichment claims.

### B.  Unjust Enrichment

STC also argues that there is no evidence that STC has been unjustly enriched.  The elements of a claim for unjust enrichment are (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  The parties do not dispute that STC has never licensed or offered to license any of the STC Patents or any other intellectual property relating to its Expandable Sandscreen Project.  KOT's argument that STC was unjustly enriched because it never paid KOT for a license to the Biflex technology is circular, given that KOT does not adduce evidence of any monetary profit as a result of having used the Biflex technology without paying this license fee to KOT.  Nor, as set forth above, has KOT adduced any evidence that others in the industry would have taken a license under the Besselink Applications but for STC's publicly asserted ownership of the patent rights in the STC Patents.  Thus, STC was not enriched by "squeezing out" a potential competitor.

---

[1] Ingberman's declaration states: "The counterclaimant was also likely harmed because its ability to license outside the oil field applications (for example, in the medical field applications) has likely been impaired by the alleged wrongful conduct.  However, at this time I have not yet found a basis to accurately estimate the degree to which the wrongful conduct (as compared to other factors) has impaired the counterclaimant's licensing ability in the medical products arena.  Therefore, in order to be conservative, I have not attempted to quantify this element of harm, other than to note that it is likely to be less than $7 million (the difference between the $10 million upfront fee specified in the Patent Assignment Agreement between United Stenting Inc./ Mr. Besselink/ Jomed and the roughly $3 million upfront fee established in the Paragon/Kentucky Oil agreement.  Wexler Decl. Opp'n Mot. Summ. J. KOT Not Entitled to Monetary Relief, Ex. T ¶¶ 11, 60.

### III.  ORDER

For the reasons set forth above, the court

1. Grants STC's motion for partial summary judgment on KOT's unfair competition and unjust enrichment claims.
2. Grants STC's motion for partial summary judgment that KOT is not entitled to monetary relief under any of its claims against STC or Memry for its seventh counterclaim for unfair competition, and its eighth counterclaim for unjust enrichment.

DATED:     11/5/07

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Memry:**
| | |
|---|---|
| Andrew C. Ryan | ryan@cantorcolburn.com |
| William J. Cass | wcass@cantorcolburn.com |
| Thomas Mango | tmango@cantorcolburn.com |
| Benjamin J. Holl | benjamin.holl@dbr.com |
| Charles A. Reid, III | charles.reid@dbr.com |

**Counsel for STC:**
| | |
|---|---|
| Nancy J. Geenen | ngeenen@foleylaw.com |
| David B. Moyer | dmoyer@foley.com |
| Kimberly K. Dodd | kdodd@foley.com |

**Counsel for KOT:**
| | |
|---|---|
| Michael H. Bierman | mbierman@luce.com |
| Nicola A. Pisano | npisano@luce.com |
| Jeffrey David Wexler | jwexler@luce.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     11/5/07                              /s/ MAG
                                                **Chambers of Judge Whyte**