**United States District Court**
For the Northern District of California

**E-FILED on**   11/5/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEMRY CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>KENTUCKY OIL TECHNOLOGY, N.V., PETER BESSELINK, MEMORY METALS HOLLAND, B.V.,<br><br>    Defendants.<br><br>KENTUCKY OIL TECHNOLOGY, N.V.,<br><br>    Counterclaimant,<br><br>    v.<br><br>MEMRY CORPORATION and SCHLUMBERGER TECHNOLOGY CORPORATION,<br><br>    Counterdefendants. | No. C-04-03843 RMW<br><br>ORDER DENYING MEMRY'S MOTION TO DISMISS; DENYING KENTUCKY OIL'S MOTION FOR SANCTIONS<br><br>**[Re Docket Nos. 635, 649]** |

      Before the court are two motions: the first is a motion by Memry Corporation ("Memry") challenging Kentucky Oil's ("KOT's") standing to assert its counterclaims against Memry; the second is a motion by KOT for sanctions, asserting that Memry violated this court's order by filing a

ORDER DENYING MEMRY'S MOTION TO DISMISS; DENYING KENTUCKY OIL'S MOTION FOR SANCTIONS—No. C-04-03843 RMW
MAG

dispositive motion following this court's February 12, 2007 order that no further dispositive motions be filed. For the reasons set forth below, the court denies both motions.

## I. BACKGROUND

In late 1996 or early 1997, Peter Besselink allegedly developed bistable and multistable cell devices for use in medical applications, specifically stents. KOT's 2d Am. Counterclaims ("KOT 2d Am. CC") ¶ 6. This technology is referred to as "Biflex technology"; a United States provisional patent application, US 60/036,359, a U.S. patent application, US 09/012,843, and a PCT application, PCT US98/03130, relating to the Biflex technology are referred to as the "Besselink Applications."

Besselink assigned the Biflex technology and Besselink Applications to Memory Metal Holland, B.V. ("MMH"), a Netherlands corporation owned by Besselink. KOT 2d Am. CC ¶ 7. On October 28, 1998, MMH entered into a Secrecy Agreement with Memry regarding "secret and confidential information relating to a proprietary stent system, as described in patent application US09/012,843." Decl. William Cass Supp. Mot. Dismiss ("Cass Decl."), Ex. 1. The Secrecy Agreement expired three years from the date of its execution and disputes regarding the validity, interpretation of or performance under the agreement were to be governed by Dutch law and settled by the Counts of Enschede (Holland). *Id.* On June 9, 1999, Memry and United Stenting, Inc. ("U.S. Inc.") entered into a Collaboration Agreement to discuss the Biflex stent technology. Cass Decl., Ex. 2. Under the Collaboration Agreement, U.S. Inc. agreed to discuss with Memry the stent principle disclosed in the Besselink Applications and techniques to make stents "more trackable." *Id.* Memry agreed to develop at least two stents based on the Biflex principle, committing at least one month development time to the effort. *Id.* Memry was to receive 5% of U.S. Inc.'s income derived from either direct sales of the resulting stents or from license income derived from the sale of the technology. *Id.* The Collaboration Agreement was signed on behalf of U.S. Inc. by Peter Vanderbruggen as its Managing Director. The president of U.S. Inc. is George Shukov, a resident of California.

As the parties are well aware, KOT alleges that Besselink, U.S. Inc., and MMH disclosed trade secrets to Memry pursuant to the terms of the Collaboration Agreement. KOT claims to be a successor in interest to the Biflex technology and alleges that Memry breached the Collaboration

ORDER DENYING MEMRY'S MOTION TO DISMISS; DENYING KENTUCKY OIL'S MOTION FOR SANCTIONS—No. C-04-03843 RMW
MAG                                                                         2

Agreement between Memry and U.S. Inc. by, *inter alia*, disclosing those trade secrets to counterdefendant Schlumberger Technology Corporation ("STC").

The Biflex technology was sold from MMH to U.S. Inc. According to the Patent Purchase Agreement dated March 22, 1999, U.S. Inc. acquired rights in the Biflex technology from MMH. Cass Decl., Ex. 8. In a paragraph titled "Biflex Stent Development," U.S. Inc. "represents to be able to collaborate with LPL Systems Inc. in order to develop Biflex Stents" and that it is willing "to use all possible means to commercialize the Biflex technology as soon as possible." *Id.* ¶ 5. On April 20, 2000, U.S. Inc. transferred at least some of its rights in the Biflex technology to Jomed N.V. by way of a Patent Assignment Agreement. Cass Decl., Ex. 6. The rights to the Biflex technology were subsequently bought by Abbott Laboratories Vascular Enterprises ("Abbott") on May 27, 2003. Pursuant to a Collaboration Agreement dated November 5, 2003 between George Shukov and KOT, Shukov loaned 200,000 Euros to KOT to assist KOT in acquiring the Biflex technology from Abbott. Cass Decl., Ex. 3. A "Patent Assignment" between Abbott, KOT and U.S. Inc. dated November 13, 2003 assigns the Besselink applications and issued patents from Abbott to KOT. Cass Decl., Ex. 9.[1]

Memry's motion is based on its contention that KOT cannot proceed with this case because it lacks standing to do so under California law. According to Memry, because KOT claims to stand in the shoes of U.S. Inc., and U.S. Inc. was never authorized to do business in California, KOT now lacks standing to sue on any cause of action it asserts as a successor-in-interest to U.S. Inc. Memry also argues that the rights to the Biflex technology that KOT seeks to enforce never transferred from U.S. Inc. to Jomed (and therefore could not have transferred from Jomed to Abbott and from Abbott to KOT). Specifically, Memry asserts that KOT lacks standing because Jomed never acquired the rights to the application of Biflex technology in non-medical applications.

---

[1] Counterdefendants previously challenged the chain of title to the Biflex technology, specifically that KOT had failed to establish the chain of title by which it acquired the alleged trade secrets. The court found that KOT had established the two disputed links in the chain of title: the transfer of trade secret rights from (i) Jomed N.V./Jomed GmbD to Abbott and (ii) Abbott to KOT. Order Denying Counterdefendants' Motion for Partial Summary Judgment Contingent on Proof of Authentication dated December 18, 2006, Docket No. 288.

## II. ANALYSIS

### A.     Lack of Standing Based under California Corporate Law

Memry's first contention that KOT lacks standing to sue is that U.S. Inc. lacked capacity to sue under California Corp. Code § 2105.  Memry argues that U.S. Inc. could not have sued on the Collaboration Agreement between the two companies and thus any further assignees of the rights to the Biflex technology are likewise barred from suing on any claims arising from that agreement.

Cal. Corp. Code § 2105 sets forth the requirement that a foreign corporation must obtain a certificate of qualification from the California Secretary of State prior to transacting intrastate business.  Cal. Corp. Code § 2203(c) provides that a foreign corporation "which transacts intrastate business without complying with Section 2105 shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state, commenced prior to compliance with Section 2105, until it has complied with the provisions thereof" and paid certain penalties, fees and taxes "that should have been paid for the period during which it transacted intrastate business."

Although it does not dispute that U.S. Inc. is a foreign corporation incorporated under the laws of Nevis, KOT first contends that U.S. Inc. does not meet the requirements of § 2203 because it did not "transact intrastate business" and thus is not impacted by § 2105.  KOT argues that U.S. Inc. did not transact intrastate business within the meaning of Cal. Corp. Code § 191, which defines "transacting intrastate business" as "entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce."

Memry points to the fact that the Patent Rights Purchase Agreement between MMH and U.S. Inc. designates U.S. Inc.'s principal place of business at 250 Polaris Avenue, Mountain View, California.  Cass Decl., Ex. 8.  It argues that the presence of an agent of a foreign corporation in California means that a corporation is transacting intrastate business.  Even assuming that the principal place of business set forth in this agreement was, as KOT argues, in error, or that the mere presence of U.S. Inc.'s president in California does not demonstrate that U.S. Inc. was transacting intrastate business, KOT cannot reasonably dispute that U.S. Inc. conducted intrastate business with LPL Systems.  It is undisputed that LPL Systems, Inc. was headquartered at 250 Polaris Avenue (the same address listed on the Patent Rights Purchase Agreement as U.S. Inc.'s principal place of

business) and that U.S. Inc. represents in the Patent Rights Purchase Agreement that it is "able to collaborate with LPL Systems in order to develop Biflex Stents."  Cass Decl. Ex. 8.  KOT's allegations and the evidence on record both establish that U.S. Inc. worked closely with LPL to develop stent designs and, allegedly, the trade secrets at issue in this case. *See, e.g.*, Cass Decl., Ex 7 (draft and notes for Collaboration Agreement between Shukov and U.S. Inc. dated March 9, 1999 stating "G. Shukov will bring into U.S. Inc. the rights of 'up to date' stent designs . . . owned by LPL systems, which can be applied in combination with the 'Biflex technology' in a stent design" and that Shukov is to deliver a laser stent cutting machine LPL107, to U.S. Inc.").  Therefore, the court concludes that U.S. Inc. transacted intrastate business for purposes of § 2203.

  Second, KOT argues that because at least one claim, its counterclaim for correction of inventorship, arises under federal law, that U.S. Inc.'s compliance with California corporate requirements are irrelevant.  KOT is correct that the right to sue in federal court on a right that arises under a federal statute is not contingent on compliance with California law for doing business in California. *See Harms, Inc. v. Tops Music Enterprises, Inc.*, 160 F. Supp. 77, 80-81 (E.D. Cal. 1958) ("We need not concern ourselves with minor contentions such as that the plaintiff has not complied with California law for doing business in the State of California.  For, conceding that the certificate on file shows non-compliance, plaintiff's right to sue being federal, it is not governed by state law. ").

  Finally, even assuming that the court must consider U.S. Inc.'s failure to comply with state law, the court finds that KOT is not barred from suing under the Collaboration Agreement merely as a result of U.S. Inc.'s failure to comply with Cal. Corp. Code § 2203(c).  Athough Memry cites *Thorner v. Selective Cam Transmission Co.*, 180 Cal. App. 2d 89 (1960), in support of its argument that an assignee of a foreign corporation is barred from suing where the foreign corporation would have been barred for failure to comply with § 2203, the court finds the circumstances of that case to be distinguishable from the instant case.  In *Thorner*, the foreign corporation that was barred from suing for failure to comply with section 6801 of the Corporations Code (a predecessor to § 2203), assigned a chose of action to another company for purposes of collection. *Id.* at 93 ("To permit an assignee for collection to sue where the corporation is barred by the statute from doing so would so

obviously frustrate the purpose of the statute that we are unwilling to place such a narrowly technical construction upon it."). *Thorner* stands for the proposition where such an assignment would frustrate purpose of statute, the assignee should, like the foreign corporation assignor, be barred from suit. Here, however, there was no specific assignment by U.S. Inc. of a collection claim. As discussed below, U.S. Inc. assigned its rights to the Biflex technology and Besselink Applications, not solely a chose of action for collection.

### B. Lack of Standing for Failure to Transfer Rights Under the Collaboration Agreement

Memry's second basis for asserting that KOT lacks standing is that the Patent Assignment between U.S. Inc. and Jomed did not transfer U.S. Inc.'s rights to sue under the Collaboration Agreement between U.S. Inc. and Memry. This contention is without merit. Paragraph 1 of the Patent Assignment to Jomed reads as follows:

> In consideration of the sums set out below in Section 2, US Inc. hereby transfers (and the Inventor and MMH to the extent they retain right to the Invention and/or the Applications, hereby transfer, and hereby undertake US Inc. to transfer) to JOMED *all rights, title and interest to the Invention and the Applications together with all rights, duties and powers arising or similar protection world-wide, and including the right to claim priority therefrom*. US Inc. further transfers (and the Inventor and MMH to the extent they retain any of the foregoing rights, hereby transfer and hereby undertakes to cause US Inc. to transfer) to JOMED *the right to sue for damages and other remedies in respect of any infringement of such rights and any copyright, trademark or other intellectual property right created, developed, subsisting or used in or primarily in connection with the Invention or the Application*.

Cass Decl., Ex. 6 (emphasis added).[2] The agreement also provides that Jomed grants to US Inc. a back license to all non-medical applications of the Biflex technology and Besselink Applications:

> JOMED hereby grants to US Inc. a worldwide royalty-free, exclusive, irrevocable (except pursuant to Section 6.2 below) license, which is dividable and transferable by US Inc. to make, have made, use, import, offer for sale, have sold and sell products which use any and all patents and patent applications relating to the invention, as well as all enhancements thereto for any and all applications other than stents.

*Id.* ¶ 6.1. The agreement further permits Jomed to terminate the back license prior to October 20, 2000 by paying U.S. Inc. $5 million. *Id.* ¶ 6.2.

---

[2] Memry does not appear to contest that the "Invention" and "Applications" set forth in the Patent Assignment are the rights to the Biflex technology and Besselink Applications.

Memry contends that because there is no evidence that Jomed ever paid U.S. Inc. the $5 million to terminate the back license, no rights to non-medical applications transferred to Jomed and, thus, the rights KOT claims to assert did not transfer from Jomed to Abbott to KOT.  This contention is without merit.  As set forth above, U.S. Inc. transferred to Jomed "all rights, title and interest to the Invention and the Applications together with all rights, duties and powers arising or similar protection world-wide" and "the right to sue for damages and other remedies in respect of any infringement of such rights and any copyright, trademark or other intellectual property right created, developed, subsisting or used in or primarily in connection with the Invention or the Application."  The provision granting U.S. Inc. a back license to applications other than stents does not alter the transfer of rights in the Invention and Applications from U.S. Inc. to Jomed.  Thus, the testimony obtained from Shukov that Jomed never paid U.S. Inc. $5 million does not establish that Jomed never obtained the rights to the non-medical applications of the Biflex technology and Besselink Applications, only that Jomed never exercised its option under paragraph 6.2 to terminate the back license to U.S. Inc.

### C. Jurisdictional Challenge or Lack of Capacity Challenge

The parties dispute whether Memry's motion constitutes a challenge to KOT's standing to sue (which Memry asserts is a jurisdictional challenge) or KOT's capacity to sue (which KOT asserts is not jurisdictional in nature).  As set forth above, Memry argues that KOT did not and could not have acquired sufficient rights from U.S. Inc. to maintain the present action; KOT contends that argument merely challenges KOT's capacity to sue under FED. R. CIV. P. 9, which KOT contends was waived by Memry's failure to plead it as a defense.  Further, if Memry's present motion does not constitute a challenge to KOT's standing to sue, KOT asserts that it is entitled to sanctions under FED. R. CIV. P. 16(f)[3] in the amount of costs and attorney's fees necessary to defend Memry's motion because

---

[3] FED. R. CIV. P. 16(f) provides in relevant part:
> If a party or party's attorney fails to obey a scheduling or pretrial order . . . the judge . . . may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

ORDER DENYING MEMRY'S MOTION TO DISMISS; DENYING KENTUCKY OIL'S MOTION FOR SANCTIONS—No. C-04-03843 RMW
MAG                                              7

1  Memry violated the court's scheduling order by failing to seek the court's leave to file the present
2  motion to dismiss. *See* February 12, 2007 Order, Docket No. 434 (ordering "No further dispositive
3  motions shall be filed."). Memry opposes KOT's motion for sanctions by asserting that a challenge
4  to KOT's standing under FED. R. CIV. P. 12(b)(1) can be brought at any time and does not violate this
5  court's order that no further dispositive motions be filed.

6  Capacity to sue is the right to come into court; standing to sue is the right to relief in court.
7  *People ex rel. Dept. of Conservation v. El Dorado County*, 36 Cal. 4th 971, 988 (2005). Although
8  the issue of capacity may be waived by failure to timely object, lack of standing is not similarly
9  waived. *Color-Vue, Inc. v. Abrams*, 44 Cal. App. 4th, 1599, 1604 (1996).

10  Memry's contentions are that KOT was not assigned the rights it seeks to vindicate for two
11  reasons: (1) because U.S. Inc. could not sue because it "lacked standing" under the California
12  Corporations Code and (2) because U.S. Inc.'s rights under the Collaboration Agreement were never
13  assigned to Jomed and thus could not have been further assigned to KOT. KOT is correct that
14  Memry's first basis for the present motion is more appropriately characterized as a challenge to
15  KOT's capacity to sue. An infirmity under Cal. Corp. Code § 2205 is similar to the type of infirmity
16  experienced by a suspended corporation. *Cf. Kaufman & Broad Communities, Inc. v. Performance
17  Plastering, Inc*., 136 Cal. App. 4th 212, 217 (2006) (a suspended corporation is not in good standing,
18  and thus cannot "exercise the powers and privileges of a corporation in good standing"). A
19  suspended corporation lacks the capacity to sue or defend. *See, e.g., Palm Valley Homeowners
20  Assn., Inc. v. Design MTC*, 85 Cal. App. 4th 553, 560 (2000) (a corporation is incapacitated "from
21  participating in any litigation activities" if suspended for failure to file the required statement under
22  Cal. Corp. Code § 1502 or to pay taxes under Cal. Rev. & Tax. Code § 23301). This is not the same
23  as lacking Article III standing.

24  As set forth above, the court has determined that Cal. Corp. Code § 2203(c) does not prevent
25  KOT from maintaining the present action, therefore it need not consider whether Memry waived its
26  argument that KOT lacked standing under § 2203. For purposes of KOT's motion for sanctions,
27
28

ORDER DENYING MEMRY'S MOTION TO DISMISS; DENYING KENTUCKY OIL'S MOTION FOR SANCTIONS—No.
C-04-03843 RMW
MAG                                                      8

Memry has presented some precedent, albeit unreported, that a party seeking to challenge standing under Cal. Corp. Code § 2205 and § 2203 may do so by motion to dismiss for lack of standing. *Leblanc Nutritions v. Advanced Nutra LLC*, 2005 WL 1398538 at *3 (E.D. Cal. 2005). Thus, although Memry's second basis for its present motion that KOT was never assigned the rights under the Collaboration Agreement between U.S. Inc. and Memry, is clearly a thinly-veiled motion for summary judgment, Memry's position that its motion to dismiss was properly brought as a motion to dismiss for lack of standing under FED. R. CIV. P. 12(b)(1) is sufficiently justified to avoid sanctions. Accordingly, KOT's motion for sanctions is denied.

### III.  ORDER

For the foregoing reasons, the court denies Memry's motion to dismiss and denies KOT's motion for sanctions.

DATED:     11/5/07

*/s/ Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Memry:**

| | |
|---|---|
| Andrew C. Ryan | ryan@cantorcolburn.com |
| William J. Cass | wcass@cantorcolburn.com |
| Thomas Mango | tmango@cantorcolburn.com |
| Benjamin J. Holl | benjamin.holl@dbr.com |
| Charles A. Reid, III | charles.reid@dbr.com |

**Counsel for STC:**

| | |
|---|---|
| Nancy J. Geenen | ngeenen@foleylaw.com |
| David B. Moyer | dmoyer@foley.com |
| Kimberly K. Dodd | kdodd@foley.com |

**Counsel for KOT:**

| | |
|---|---|
| Michael H. Bierman | mbierman@luce.com |
| Nicola A. Pisano | npisano@luce.com |
| Jeffrey David Wexler | jwexler@luce.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   11/5/07                              /s/ MAG
                                         **Chambers of Judge Whyte**